CHARLES A MURRAY TRUST v FUTRELL

W H BEARCE TRUST v FUTRELL

Docket Nos. 304093 and 311134. Submitted September 10, 2013, at
    Lansing. Decided October 24, 2013, at 9:10 a.m.
    In 1934, the Waubun Beach Association and others brought an
        action in the Cheboygan Circuit Court against Robert Wilson
        and others, seeking to establish an easement over property in
        the Waubun Beach Subdivision for purposes of ingress and
        egress to and from the public highways. The plaintiffs and the
        defendants were the owners of lots in the subdivision, including
        lots 1 through 34. The court entered an order granting a right
        of way by necessity over lots 1 through 34. The order also stated
        that the right of way was appurtenant to the lots and reciprocal
        between the parties. Defendants Theodore R. MacClure and his
        wife, the owners of lots 4, 5, 7, 8, 35 through 38, and 42 through
        51, appealed. The Supreme Court, after explaining that a way of
        necessity ceases to exist when the necessity to use it ceases,
        reversed the order of the trial court on the basis that all the
        parties had a way to reach their premises without passing over
        the property of the MacClures. *Waubun Beach Ass'n v Wilson*,
        274 Mich 598 (1936). In 2007, Edward and Rosemary Futrell,
        the owners of lots 20 and 21, except the southeastern 30 feet of
        lot 21, planted trees on their property that blocked access
        through the easement. The Charles A. Murray Trust, Charles
        and Frances Gano, and others (the Murray plaintiffs), who
        owned lots 4 through 19, brought an action in the Cheboygan
        Circuit Court against the Futrells (case number 07-007789-CH),
        seeking a declaration that they had an easement by prescrip-
        tion, acquiescence, or necessity over the Futrells' property
        during the winter and to enjoin the Futrells from interfering
        with the Murray plaintiffs' access to their property over the
        easement. The W. H. Bearce Trust and others (the Bearce
        plaintiffs), who own the southern half of lot 23 through lot 34,
        with the exception of lot 32 and the northern half of lot 33, also
        brought an action in the Cheboygan Circuit Court against the
        Futrells and others (case number 08-007889-CH), seeking a
        confirmation by the trial court that reciprocal, appurtenant

easements existed over lots 9 through 34. The trial court, Scott L. Pavlich, J., consolidated the cases. The trial court granted plaintiffs' request for summary disposition concerning the validity of the 1934 decree with respected to lots 9 through 34, opining that the owners of lots 9 through 34 in the present case had been awarded an easement and that the Supreme Court's decision had not affected those rights. The trial court stated that the Supreme Court's decision had only reversed the 1934 decree relative to lots 4 through 8, which were owned by the MacClures, and had not affected the decree with respect to lots 9 through 34. The trial court ordered that plaintiffs had the burden of proof to show that an easement by necessity existed with regard to lots 4 through 8 and defendants had the burden of proof to show that lots 9 through 34 were no longer entitled to an easement by necessity over defendants' property. The trial court issued separate opinions and judgments in each case. In case number 07-007789-CH, the court held that the Murray trust and the Ganos, the owners of lots 4 through 8, had failed to establish an easement by necessity over the Futrells' property and dismissed their claims with prejudice. The trial court modified the easement by necessity for lots 9 through 19, as decreed in 1934, to provide an "easement for necessity" only with regard to "emergency, police, medical and fire vehicles" that could travel over the Futrells' property during the winter months only when an accumulation of snow and ice existed and in order to respond to emergencies located on lots 9 through 19. The remaining claims of the Murray plaintiffs were dismissed with prejudice. In case number 08-007889-CH, the trial court held that the reciprocal easement rights created by necessity over the parties' lots were extinguished because there was no longer a necessity for the parties to cross each other's lots. The trial court noted that the Bearce plaintiffs had access to a public road without crossing the Futrells' property and that the Futrells, even in the winter, could access their property using their private drive without traversing others' lots. The trial court's order stated that the easement by necessity awarded in 1934 was extinguished to the extent that the owners of lot 20 and the north half of lot 21 shall not traverse the south half of lot 23 and lots 24 through 29 and 32 through 34 and the owners of the south half of lot 23 and lots 24 through 29 and 32 through 34 shall not traverse lot 20 and the north half of lot 21. After the trial, both Edward and Rosemary Futrell passed away, and the trial court substituted Kelly Futrell, executor of Rosemary's estate, as a defendant in both cases. The Murray plaintiffs appealed and Kelly Futrell cross-appealed with regard to case number 07-007789-CH. (Docket No. 304093.) The W.H. Bearce

Trust and some of the other Bearce plaintiffs appealed with regard to case number 08-007889-CH. (Docket No. 311134.) The Court of Appeals consolidated the appeals.

The Court of Appeals *held*:

1. The 1934 decree awarded an easement by necessity.

2. Strict necessity is required to establish an easement by necessity. The Court in *Chapdelaine v Sochocki*, 247 Mich App 167 (2001), erroneously applied a reasonable-necessity standard for easements by necessity. The strict-necessity standard articulated by the Supreme Court in *Waubun Beach*, 274 Mich 598 (1936), has not been altered by the Supreme Court and binds the Court of Appeals to apply the strict-necessity standard. *Chapdelaine* did not establish a new rule of law that reasonable necessity is required to establish an easement by necessity.

3. There is no strict necessity in this case. Neither the Bearce appellants nor the Murray plaintiffs are entitled to an easement by necessity. The trial court erred to the extent that it ruled otherwise.

4. The 1934 decree did not establish a "social easement" to allow the neighboring parties to socialize.

5. The trial court did not err in case number 08-007889-CH by extinguishing the easement by necessity over the Futrell property.

6. The Court's holding in *Waubun Beach* with regard to the Murray plaintiffs' entitlement to an easement was limited to the existence of a right of way over the MacClures' lots 4, 5, 7, and 8. The Court did not extinguish the rights of the owners of lots 1, 2, 3, 6, and 9 through 34 to traverse each other's lots for ingress and egress to and from public highways. The Court did not extinguish the MacClures' right to traverse lots 1, 2, 3, 6, and 9 through 34 for ingress and egress to and from public highways. However, the Court extinguished the easement by necessity that permitted the owners of lots 1, 2, 3, 6, and 9 through 34 to traverse MacClure lots 4, 5, 7, and 8.

7. In light of *Waubun Beach* and assuming that a strict necessity for an easement still existed, all the Murray plaintiffs had an easement by necessity to traverse defendant's property. The *Waubun Beach* Court did not extinguish the easement rights of the owners of lots 4 through 19 to traverse the lots now owned by defendant, lot 20 and the portion of lot 21 excluding the southern 30 feet. It only extinguished the rights to traverse the lots owned by the MacClures (the lots now owned by the Murray trust and the Ganos). Therefore, the trial court erred by placing the burden on the Murray trust and the Ganos, the owners of lots

4 through 9, to show the existence of an easement by necessity. Defendant bore the burden of establishing that the necessity for the Murray plaintiffs' easement had ceased to exist.

8. The trial court did not err by finding that the parties had access to their lakefront lots back to the county road and had driveways installed from the road to gain access to the lots and, therefore, there was not a strict necessity in this case. The Murray plaintiffs were not landlocked. Use of defendant's property was not strictly necessary for purposes of ingress and egress to and from a public highway, even in the winter. The trial court erred in case number 07-007789-CH by awarding an easement by necessity when no strict necessity existed.

9. An easement by necessity no longer exists because there is no longer a strict necessity for its existence. In case number 07-007789-CH, the trial court erred by awarding an easement by necessity. The judgment in that case is affirmed in part and reversed in part. The trial court properly extinguished the easement by necessity in case number 08-007889-CH and the judgment in that case is affirmed.

Judgment in Docket No. 304093 affirmed in part and reversed in part. Judgment in Docket No. 311134 affirmed.

1. EASEMENTS — IMPLIED EASEMENTS — EASEMENTS BY NECESSITY — EASEMENTS IMPLIED FROM QUASI-EASEMENTS.

An implied easement may arise in essentially two ways: an easement by necessity or an easement implied from a quasi-easement; an easement by necessity may be implied by law when an owner of land splits the property so that one of the resulting parcels is landlocked except for access across the other parcel; an easement by necessity may arise either by grant or by reservation and is not dependent on the existence of any established route or quasi-easement before the severance of the estate by the common grantor; an easement by necessity is first established after the severance.

2. EASEMENTS — EASEMENTS BY NECESSITY — STRICT NECESSITY.

A right of way of necessity is not a perpetual right; it ceases to exist when the necessity for its continuance ceases; strict necessity is required to establish an easement by necessity.

3. EASEMENTS — IMPLIED EASEMENTS — EASEMENTS IMPLIED FROM QUASI-EASEMENTS — CONTINUOUS EASEMENTS — NONCONTINUOUS EASEMENTS.

Three things must be shown to establish an easement implied from a quasi-easement: (1) that an apparently permanent and obvious

servitude was imposed on one part of an estate in favor of another during the unity of title, (2) continuity, and (3) that the easement is reasonably necessary for the fair enjoyment of the property it benefits; a continuous easement is one that may be enjoyed without any act on the part of the party claiming it; a noncontinuous easement is one to the enjoyment of which the act of the party is essential; an easement implied from a quasi-easement is an easement appurtenant that runs with the land.

*Plunkett Cooney* (by *Ernest R. Bazzana*) for the Charles A. Murray Trust and others.

*Speaker Law Firm, PLLC* (by *Liisa R. Speaker*), for the W. H. Bearce Trust and others.

*Brown Powers, PLLC* (by *Bridget Brown Powers*), for Kelly Futrell, executor of the estate of Rosemary Futrell, deceased.

Before: WILDER, P.J., and DONOFRIO and BECKERING, JJ.

BECKERING, J. In 1934, the Cheboygan Circuit Court granted lot owners of the plat of Waubun Beach a reciprocal easement by necessity to traverse each other's lots for purposes of ingress and egress to and from public highways. Over 70 years later, one of the subsequent owners of these lots refused to allow access through their property to the other lot owners. The consolidated appeals before us present the following question: does the reciprocal easement by necessity still exist in light of both an appeal of the 1934 decree in the Michigan Supreme Court in *Waubun Beach Ass'n v Wilson*[1] and the necessity for its existence, if any, given the factual circumstances existing at the time these consolidated cases were filed?

The trial court concluded that it does, but only for emergency-vehicle access to a limited number of the lots

---

[1] *Waubun Beach Ass'n v Wilson*, 274 Mich 598; 265 NW 474 (1936).

in the winter when snow and ice has accumulated. In Docket Number 304093, the Murray plaintiffs[2] appeal as of right the trial court's judgment in circuit court case number 07-007789-CH, which dismissed with prejudice claims of an easement for the benefit of lots 4 through 8 (the Murray trust and Gano lots) and granted the winter emergency-vehicle easement for the benefit of lots 9 through 19 (the remaining Murray plaintiffs' lots). Defendant[3], Kelly Futrell, executor of the estate of Rosemary Futrell, deceased (hereafter "defendant"), cross-appeals and argues that no easement by necessity remains. In Docket Number 311134, the Bearce appellants[4] appeal as of right the trial court's judgment in circuit court case number 08-007889-CH, which extinguished the easement of the Bearce plaintiffs. We hold that an easement by necessity no longer exists because there is no longer a strict necessity for its existence. Therefore, although the trial court properly extinguished the easement by necessity in case number 08-007889-CH, it erred in case number 07-007789-CH by awarding an easement by necessity when no strict necessity existed. Accordingly, we affirm in part and

---

[2] The Murray plaintiffs are the Charles A. Murray Trust (the Murray trust); Charles and Frances Gano; Priscilla S. Krippendorf; Paul E. Blome; Nancy J. Love; Edward and Robetta Bicsok; Robert and Isabell Novak; and Frederick M., Charlotte, and Norman P. Otto.

[3] Defendant's parents, Edward and Rosemary Futrell, were the original defendants in these consolidated cases. They passed away after the trial, and the trial court substituted defendant as a party defendant in their place.

[4] The Bearce appellants are the following Bearce plaintiffs: Gretchen H. Bearce and David H. Bearce, as cotrustees of the W. H. Bearce Trust; Gretchen H. Bearce, as trustee of the Gretchen H. Bearce Revocable Trust; Franklin E. Hill Jr.; and Rebecca Hill. The following are the Bearce plaintiffs who are not appellants before this Court: Suzanne Gabriel, as trustee of the Suzanne Gabriel Revocable Living Trust; Michael and Kimberly Thoresen; Dorothy S. Demrick; Daryl Davis; and Elizabeth Bevis, as trustee of the Elizabeth B. Bevis Trust.

reverse in part the trial court's judgment in case number 07-007789-CH and affirm the trial court's judgment in case number 08-007889-CH.

I. PERTINENT FACTS AND PROCEDURAL HISTORY

This case involves a dispute over the existence of an easement in the Waubun Beach Subdivision in Tuscarora Township. The land at issue in Waubun Beach Subdivision was owned by E. R. Smith and was platted in 1914. The 34 lots at issue are aligned north-to-south along Burt Lake, with the west side of each lot abutting Burt Lake. For a short distance, the land extending east from the shore of Burt Lake is comparatively flat and contains the parties' cottages or homes. North Wahbee Avenue (the location of the alleged easement) runs parallel to Burt Lake through the parties' lots and ultimately connects to Frontenac Road to the south of the parties' lots. To the east, the parties' lots then rise abruptly in a bluff to higher land. To the east of the parties' lots is Chippewa Beach Road.

Pertinent to this case are an August 15, 1934 decree of the Cheboygan Circuit Court and the appeal of the decree in the Michigan Supreme Court in *Waubun Beach Ass'n v Wilson*, 274 Mich 598; 265 NW 474 (1936).

A. THE 1934 CIRCUIT COURT DECREE

The plaintiffs and defendants in the 1934 case were owners of lots 1 through 34 of the plat of Waubun Beach. According to the circuit court's decree, the plat was "bounded on the west by Burt Lake and on the other sides by wild cut-over lands not owned by any of the parties," except for a small parcel owned by one of the defendants. The plat had no public streets or alleys.

However, for more than 15 years, the plaintiffs, the defendants, and their grantors "used and maintained a way" over lots 1 through 34, which became a trail used at the time of the decree with all parties having the same right of passage over the lots of the other parties. The circuit court found that there was no other practical means for the lots to be connected with public highways or for the lots' occupants to communicate amongst themselves or use the water works system and community buildings built and owned by them in common.

The circuit court ordered that all the parties to the case had, "for the purposes of ingress and egress to and from the public highways" in Tuscarora Township, "a right of way by necessity over, upon, and across each and every of the premises of the other parties hereto from lot one (1) to and including lot thirty-four (34) of said plat of Waubun Beach, and immediately adjoining said plat on the north to the township highway at the foot of the bluff . . . ." The court specified that the "right of way is the roadway now used by the owners of said lots one (1) to thirty-four (34) in said Plat, running northerly and southerly along and adjoining the bluff upon said lots and extending to said township road as aforesaid, and is and shall be only of sufficient width to permit the use thereof by vehicles in common use . . . ." The court ordered that the right of way would extend to the lot owners and "their successors and assigns, and to the families of said lot owners, their servants, agents, employees, friends and invitees, or others having business or proper occasion to reach the premises of the said several owners of said lots, and shall be appurtenant to the said several lots." Finally, the court ordered that the right of way was reciprocal between the parties.

The only parties to appeal in the Michigan Supreme Court were the owners of lots 4, 5, 7, 8, 35 through 38, and 42 through 51: the MacClures. *Waubun Beach*, 274 Mich at 601-602. After explaining that a way of necessity ceases to exist when the necessity to use it ceases, the Supreme Court held as follows:

> If plaintiffs ever had a way of necessity upon or over the lands of appellants, such necessity ceased to exist before the filing of the bill October 5, 1932. At that time appellants had not only constructed roads from their lots to the public highway along the section line between sections 1 and 2, but had opened a way across their own premises from lot 35 to the highway, running south of the plat, which was open and used; so that at the time of the filing of the bill of complaint plaintiffs had a right of way to this section line road, as had the owner of lot 6. The owners of lots 1, 2 and 3 had a way to their premises over the lands lying north thereof, and persons owning lands south of those owned by appellants had a way to lot 35, which was established by the trial court, and were given an extension of the right of way for temporary use at least for a period of three years from there to the highway south of the premises by appellants, so that, at the time of the filing of the bill of complaint, all of the parties owning property in the plat had a way to reach their premises without passing over the lands of appellants. Having such way, no right of way of necessity existed over the lands and premises of appellants.
>
> The decree of the trial court is reversed as to appellants . . . . [*Id.* at 615.]

C. THE PRESENT CASE

The Murray plaintiffs, the Bearce plaintiffs, and defendant are lot owners in the Waubun Beach Subdivision. The Murray plaintiffs' properties consist of lots

4 through 19.[5] Defendant owns lots 20 and 21, except for the southeastern 30 feet of lot 21. The Murray plaintiffs' lots and defendant's lots have access to Chippewa Beach Road through private driveways that go up the bluff.[6] The owners of the remaining part of lot 21, lot 22, and the northern half of lot 23, are not parties in this case. The Bearce plaintiffs' properties consist of the southern half of lot 23 through lot 34, with the exception of lot 32 and the northern half of lot 33, which belong to Joseph C. Rode, who is not a party in this case.[7]

In the early fall of 2007, the Futrells planted trees on their property that blocked access through North Wahbee Avenue. The Futrells informed the Murray plaintiffs of their intention to maintain the "landscaping." The Murray plaintiffs and the Bearce plaintiffs filed separate complaints against the Futrells in case numbers 07-007789-CH and 08-007889-CH, respectively. The Murray plaintiffs requested that the trial court declare that they had an easement by prescription, acquiescence, or necessity over the Futrells' property during the winter and enjoin the Futrells from interfering with the Murray plaintiffs' access to their prop-

---

[5] The Murray trust's property consists of lots 4 through 6, the Ganos own lots 7 through the northern half of lot 9, Krippendorf owns the southern half of lot 9 through lot 13, the Blome property is lot 14, the Bicsoks own lots 15 and 16, the Novaks own lot 17 and the northern half of lot 18, and the Ottos own the southern half of lot 18 and lot 19.

[6] As the trial court noted, since the 1934 decree, all the landowners acquired additional property to the east of the original lots that runs out to the county road and they had driveways installed from that county road to access their lakefront parcels.

[7] The Bearces own the southern half of lot 23 through part of lot 25; the Gabriels own the remaining part of lot 25; the Thoresens own lot 26; Demrick owns lot 27; the Hills own lots 28 and 29; the Bevises own lots 30 and 31; lot 32 and the northern half of lot 33 belong to Joseph C. Rode; and Davis owns the southern half of lot 33 and lot 34.

erties over the easement. In contrast, the Bearce plaintiffs requested that the trial court confirm its 1934 decree that reciprocal, appurtenant easements for North Wahbee Avenue existed over lots 9 through 34.

The trial court consolidated the cases and considered various motions for summary disposition brought by plaintiffs. The trial court granted plaintiffs' "request for summary disposition concerning the validity of the 1934 decree as it effects [sic] Lots 9 through 34," opining in pertinent part:

> It appears from a review of the *Waubun* decision that owners of Lots 9 through 34 in the present case were awarded and [sic] easement over the property on the lakeside of the bluff and the Supreme Court did not issue a decision that affected those rights. The 1934 decision was appealed by the MacClures who owned Lots 4 through 8. The other defendants to the original action did not appeal the 1934 decision. The other lot owners were not a party to the appeal. . . .

> The Supreme Court decision specifically only reversed the decree relative to the lots owned by the MacClures being Lots 4 through 8. The decree with respect to Lots 9 through 34 was unaffected by the Supreme Court decision.

Addressing the burden of proof at trial in light of the Supreme Court's decision in *Waubun Beach*, the trial court thereafter ordered that "Plaintiffs shall have the burden of proof to show that as to Lots 4 through 8 there exists an easement by necessity." "Defendants shall have the burden of proof at trial that Lots 9 through 34 no longer are entitled to an easement over Defendants property by reasonable necessity[.]" The trial court conducted a bench trial[8] and issued separate opinions and judgments for each case.

---

[8] The Bearce plaintiffs did not participate at trial, which the trial court explained as follows:

In its opinion in case number 07-007789-CH, the court found that "all of the lot owners" had property running east to the county road; thus, all of the parties had access from their lakefront lots back to the county road. Furthermore, the parties had driveways installed from that county road to access their lakefront parcels, most of which were unpaved and quite steep in their incline. The court opined that although it may be somewhat difficult, the parties could access their lakefront properties through the use of their own driveways during the winter with regular plowing and the use of a vehicle with a relatively high ground clearance. The court found that emergency vehicles such as ambulances and fire trucks could not access the lots during the winter when significant amounts of snow and ice were present. The court concluded that the owners of lots 4 through 8, the Murray trust and the Ganos, had failed to meet their burden of proof to establish necessity because the issue whether road access to the north was available had not been resolved at trial. The court concluded that the Futrells had failed to meet their burden of proof for the same reason and, therefore, the remaining Murray plaintiffs had an easement by necessity previously granted by the 1934 decree. However, the court decided that the easement by necessity granted by the 1934 decree should be "significantly reduced" because "there no longer exists any necessity except for the necessity of emergency vehicle access during the winter months." Thus, the court reduced the easement to "an easement by necessity for emergency

---

At the commencement of trial, the attorney for the Bearce Plaintiffs indicated his clients had nothing left to litigate as they merely wanted an affirmation that the 1934 decree remained effective as to them as a matter of law. Consequently counsel for the Bearces excused himself from the trial proceedings and the Bearce Plaintiffs presented no proofs nor participated in the trial.

vehicles . . . for Lots 9 through 19 during the winter months when there is an accumulation of snow and ice."

The trial court's judgment in case number 07-007789-CH provided that the Murray trust and the Ganos, the owners of lots 4 through 8, failed to establish an easement by necessity over the Futrells' property and that their claims were dismissed with prejudice. It further provided that the easement by necessity for lots 9 through 19 as decreed by the court in 1934 was modified so that "the easement for necessity exists only as to emergency, police, medical and fire vehicles which may travel over and across [the Futrells' property] during the winter months only when there exists an accumulation of snow and ice, to respond to emergencies located upon Lots 9 through 19, or any of them." The remaining claims in the Murray plaintiffs' complaint were dismissed with prejudice.

In case number 08-007889-CH, the court's opinion provided that the reciprocal easement rights created by necessity over the parties' lots were extinguished because there was no longer a necessity for the parties to traverse each other's lots. The court explained that the proofs submitted at trial illustrated that the Bearce plaintiffs' lots had access to a public road without crossing the Futrells' property. The court also explained that the proofs established that the Futrells, even in the winter, could access their property using their private drive without traversing lots to the north or south. The trial court entered a judgment ordering as follows:

> [T]he rights and interests of the parties hereto to the easement by necessity awarded by this Court in Decree entered August 15, 1934, are hereby extinguished to the extent that the party/owners, invitees, and assigns of Lot 20 and the north one-half of Lot 21 shall not traverse or go upon the south one-half of Lot 23 and Lots [24-29 and

32-34], and the party/owners, invitees, and assigns of the south one-half of Lot 23 and Lots [24-29 and 32-34] shall not traverse or go upon Lot 20 and the north one-half of Lot 21 . . . .

II. THE NATURE OF THE EASEMENT AWARDED IN THE 1934 DECREE

The parties dispute the nature of the easement awarded by the circuit court in 1934. The Bearce appellants and the Murray plaintiffs insist that the circuit court awarded three easements implied from quasi-easements, specifically (1) an easement to access landlocked lots, (2) a social easement for neighbors to communicate with each other, and (3) an easement for the neighborhood's waterworks system. In contrast, defendant argues that the 1934 decree awarded a single easement by necessity for the benefit of lots 1 through 34 for the specific, sole purpose of ingress and egress to and from a public road.

We review this question of law de novo. See *Thomas M Cooley Law Sch v Doe 1*, 300 Mich App 245, 254; 833 NW2d 331 (2013).

"An implied easement may arise in essentially two ways": (1) an easement by necessity and (2) an easement implied from a quasi-easement. *Schmidt v Eger*, 94 Mich App 728, 732-733; 289 NW2d 851 (1980); see also *Forge v Smith*, 458 Mich 198, 211 n 38; 580 NW2d 876 (1998). An easement by necessity "may be implied by law where an owner of land splits his property so that one of the resulting parcels is landlocked except for access across the other parcel." *Chapdelaine v Sochocki*, 247 Mich App 167, 172; 635 NW2d 339 (2001), citing *Schmidt*, 94 Mich App at 732. "An easement by necessity may arise either by grant, where the grantor created a landlocked parcel in his grantee, or it may arise by reservation, where the grantor splits his prop-

erty and leaves himself landlocked." *Chapdelaine*, 247 Mich App 172-173. "This sort of implied easement is not dependent on the existence of any established route or quasi-easement prior to the severance of the estate by the common grantor; it is first established after the severance." *Schmidt*, 94 Mich App at 733. "A right of way of necessity is not a perpetual right. It ceases to exist when the necessity for its continuance ceases." *Waubun Beach*, 274 Mich at 609.

In contrast, an easement implied from a quasi-easement "requires that at the severance of an estate an obvious and apparently permanent servitude already exists over one part of the estate and in favor of the other. It also requires a showing of [reasonable] necessity . . . ." *Schmidt*, 94 Mich App at 733-735. Thus, "three things must be shown: (1) that during the unity of title an apparently permanent and obvious servitude was imposed on one part of an estate in favor of another, (2) continuity, and (3) that the easement is reasonably necessary for the fair enjoyment of the property it benefits." *Id.* at 731. Our Supreme Court has explained that "[a] continuous easement is one which may be enjoyed without any act upon the part of the party claiming it . . . . A noncontinuous easement is one to the enjoyment of which the act of the party is essential, and of this class a way is the most usual." *Waubun Beach*, 274 Mich at 606. An easement implied from a quasi-easement is an easement appurtenant. See *Bean v Bean*, 163 Mich 379, 397; 128 NW 413 (1910); see also *Ketchel v Ketchel*, 367 Mich 53, 58; 116 NW2d 219 (1962). An easement appurtenant runs with the land. See *Myers v Spencer*, 318 Mich 155, 163-167; 27 NW2d 672 (1947).

We conclude that the 1934 decree awarded an easement by necessity and not three easements implied

from a quasi-easement. The 1934 decree provides that aside from the trail used and established across lots 1 through 34, "there is no other practical means by which said lots can be connected with public highways . . . ." Thus, the court essentially found that the lots were landlocked. Significantly, the 1934 decree expressly uses the words "a right of way by necessity," ordering that all of the owners of lots 1 through 34

> have, respectively, *for the purposes of ingress and egress to and from the public highways* in said Township of Tuscarora, *a right of way by necessity* over, upon, and across each and every of the premises of the other parties hereto from lot one (1) to and including lot thirty-four (34) of said plat of Waubun Beach . . . . [Emphasis added.]

Although the decree does refer to the fact that the parties and their grantors had used and maintained the trail for more than 15 years, this finding by the court does not establish that the decree awards easements implied from a quasi-easement.[9] Significantly, the language of the decree does not include a finding that the trail was an apparently permanent and obvious servitude imposed on one part of an estate in favor of another during unity of title. See *Schmidt*, 94 Mich App at 731-735. Moreover, the 1934 decree does not include any facts that would support such a finding, the trial court here did not find any facts to support this finding, and the evidence at trial did not support such a finding. In addition, at the time the trial court issued its decree

---

[9] It is noteworthy that the circuit court in 1934 considered and rejected the argument that an easement existed by "adverse user or by prescription," which may explain why the circuit court's decree includes a reference to over 15 years of usage. *Waubun Beach*, 274 Mich at 601; see also, generally, *Engel v Gildner*, 248 Mich 95, 99; 226 NW 849 (1929) (15-year period required for easement by prescription); *Hopkins v Parker*, 296 Mich 375, 376; 296 NW 294 (1941) ("It is settled in this jurisdiction that such an easement may be acquired by adverse user for 15 years.").

in 1934, the law in Michigan was that a right of way is not a continuous easement for purposes of establishing an easement implied from a quasi-easement. See *Zemon v Netzorg*, 247 Mich 563, 565-566; 226 NW 242 (1929). Thus, assuming the trial court knew the law, see *People v Alexander*, 234 Mich App 665, 675; 599 NW2d 749 (1999) (stating that a trial court is presumed to know the law), such an easement implied from a quasi-easement could not have been established.

Finally, the Supreme Court in *Waubun Beach* recognized that the easement awarded by the 1934 decree was an easement by necessity. *Waubun Beach*, 274 Mich at 601. We presume that the *Waubun Beach* Court knew the law. Cf. *Alexander*, 234 Mich App at 675 (stating that a trial court is presumed to know the law). The *Waubun Beach* Court's analysis of the issues before it further supports a finding of an easement by necessity. The Court's opinion reveals that the Court first considered the elements of an easement implied from a quasi-easement, determining that the easement was not continuous because it was a right of way; the Court explained that noncontinuous easements do not pass on the severance of two tenements as appurtenances, unless the grantor uses language in a conveyance sufficient to create an easement de novo (which was not present in *Waubun Beach*). See *Waubun Beach*, 274 Mich at 605-607. The Court then discussed easements by necessity, explaining that a showing of strict necessity is required and that such an easement ceases to exist when the necessity no longer exists. *Id.* at 608-614. The Court ultimately concluded that a right of way by necessity did not exist over the MacClures' property because at the time the complaint was filed, all the parties in the plat had a way to reach their property without passing over the MacClures' land. *Id.* at 615.

Accordingly, we hold that the 1934 decree awarded an easement by necessity.

### III. THE DEGREE OF NECESSITY REQUIRED FOR AN EASEMENT BY NECESSITY

The parties also dispute the degree of necessity required to establish an easement in this case: strict necessity or reasonable necessity. We hold that strict necessity is required to establish an easement by necessity.

Whether an easement by necessity requires a showing of strict or reasonable necessity is a question of law that this Court reviews de novo. See *Thomas M Cooley Law Sch*, 300 Mich App at 254.

In *Waubun Beach*, our Supreme Court articulated the standard for the establishment of an easement by necessity as one of "strict necessity." *Waubun Beach*, 274 Mich at 609. Indeed, the Court explained that "the fact that a former way of necessity continues to be the most convenient way will not prevent its extinguishment when it ceases to be *absolutely* necessary." *Id.* at 611 (quotation marks and citation omitted; emphasis added). The requirement of strict necessity for an easement by necessity was the law in Michigan before *Waubun Beach*. See, e.g., *Goodman v Brenner*, 219 Mich 55, 59; 188 NW 377 (1922) ("A way of necessity arises when one grants a parcel of land surrounded by his other land, or when the grantee has no access to it except over other land of the grantor, or as an alternative by passing upon the land of a stranger.") (quotation marks and citation omitted); *Moore v White*, 159 Mich 460, 463-464; 124 NW 62 (1909) (explaining that a way of necessity is one of strict necessity).

Since our Supreme Court's decision in *Waubun Beach*, our Supreme Court has continued to apply the

principles of strict necessity in the context of easements by necessity. See, e.g., *Forge*, 458 Mich at 211 n 38 ("A claim of easement by necessity would fail because there is no true necessity, as plaintiff is not landlocked. See *Goodman v Brenner*, 219 Mich 55, 59; 188 NW 377 (1922)."). This Court has both recognized and applied the principles of strict necessity articulated in *Waubun Beach*. See, e.g., *Birch Forest Club v Rose*, 23 Mich App 492, 496-497; 179 NW2d 39 (1970); *Schmidt*, 94 Mich App at 732-733; *Schadewald v Brulé*, 225 Mich App 26, 41 n 4; 570 NW2d 788 (1997). However, it has not done so consistently. Compare *Schmidt*, 94 Mich App at 732-733 (stating that the standard is one of strict necessity), and *Schadewald*, 225 Mich App at 41 n 4 (applying principles articulated in *Waubun Beach*), with *Chapdelaine*, 247 Mich App at 173 (applying reasonable-necessity standard), *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130-131; 737 NW2d 782 (2007) (stating that reasonable necessity is the appropriate standard), and *Tomecek v Bavas*, 276 Mich App 252, 275 n 9; 740 NW2d 323 (2007) (stating that the necessary showing for an easement by necessity is one of reasonable necessity, not strict necessity), vacated in pertinent part *Tomecek v Bavas*, 482 Mich 484 (2008).

The origin of this inconsistency appears to be this Court's decision in *Chapdelaine*, 247 Mich App at 172-173, where this Court opined as follows before applying a reasonable-necessity standard to a question regarding an easement by necessity:

> An easement by necessity may arise either by grant, where the grantor created a landlocked parcel in his grantee, or it may arise by reservation, where the grantor splits his property and leaves himself landlocked. *Goodman v Brenner*, 219 Mich 55, 59; 188 NW 377 (1922); *Moore v White*, 159 Mich 460, 463-464; 124 NW 62 (1909). *Regardless of whether the easement at issue is implied by law or by reservation, the party asserting the right to the easement*

*need only show that the easement is reasonably necessary,
not strictly necessary, to the enjoyment of the benefited
property. Schmidt, supra* at 735. See also 1 Restatement
Property, Servitudes, 3d, § 2.15. [Emphasis added.]

Our Court has relied on this quotation, or cases citing
it, for the proposition that the reasonable-necessity
standard applies to an easement by necessity. See, e.g.,
*Schumacher*, 275 Mich App at 130-131; *Tomecek*, 276
Mich App at 275 n 9.

The *Chapdelaine* Court's citation of *Schmidt*, 94
Mich App at 735, does not support the proposition that
the reasonable-necessity standard applies to an ease-
ment by necessity. Indeed, the *Schmidt* Court expressly
stated, "Easements implied from necessity have been
recognized in Michigan as requiring a showing of strict
necessity." *Id*. at 732-733. The *Schmidt* Court's discus-
sion of reasonable necessity was confined to easements
implied from quasi-easements. See *id*. at 732-735. In
*Schmidt*, this Court was tasked with resolving whether
there was a difference between a grant and a reserva-
tion for purposes of applying the reasonable-necessity
standard to easements implied from quasi-easements.
*Id*. at 734-735.

The *Chapdelaine* Court's citation of 1 Restatement
Property, 3d, Servitudes, § 2.15, p 202 does, however,
support the proposition that the reasonable-necessity
standard applies to an easement by necessity. The
Restatement reads as follows:

A conveyance that would otherwise deprive the land
conveyed to the grantee, or land retained by the grantor, of
rights necessary to reasonable enjoyment of the land im-
plies the creation of a servitude granting or reserving such
rights, unless the language or circumstances of the convey-
ance clearly indicate that the parties intended to deprive
the property of those rights.

Comment *d* to § 2.15 addresses the degree of necessity required:

> "Necessary" rights are not limited to those essential to enjoyment of the property, but include those which are reasonably required to make effective use of the property. If the property cannot otherwise be used without disproportionate effort or expense, the rights are necessary within the meaning of this section. [*Id.* at 207.]

Notwithstanding this authority from the Restatement, citation of authority from our Supreme Court for the use of the reasonable-necessity standard is markedly absent from *Chapdelaine*. We have not located any authority from our Supreme Court adopting this section of the Restatement or applying the reasonable-necessity standard to easements by necessity. Therefore, the *Chapdelaine* Court erroneously applied the reasonable-necessity standard for easements by necessity. The strict-necessity standard was the law in Michigan when *Chapdelaine* was decided and it remains the law in Michigan today absent contrary authority from our Supreme Court.

Accordingly, we conclude that strict necessity is required to establish an easement by necessity.

We note that it is unnecessary for this Court to convene a conflict panel under MCR 7.215(J) to resolve the inconsistency in this Court's easement-by-necessity decisions for two reasons. First, it is well established that this Court is bound by stare decisis to follow the decisions of the Supreme Court. See, e.g., *Griswold Props, LLC v Lexington Ins Co*, 276 Mich App 551, 563; 741 NW2d 549 (2007); *Meier v Awaad*, 299 Mich App 655, 670; 832 NW2d 251 (2013). Only the Supreme Court has the authority to overrule one of its prior decisions; until the Court does so, all lower courts must follow the prior deci-

sion. *Paige v Sterling Hts*, 476 Mich 495, 524; 720 NW2d 219 (2006). The strict-necessity standard articulated by our Supreme Court has been the rule of law since before the Court's decision in *Waubun Beach*, and there is no case from our Supreme Court changing this rule of law to the reasonable-necessity standard. Thus, we are bound by stare decisis to apply the strict-necessity standard as articulated by the Supreme Court. See *Meier*, 299 Mich App at 670. If we were to follow *Chapdelaine*, we would be violating the rule of stare decisis. Second, MCR 7.215(J)(1) does not require this Court to follow *Chapdelaine*. MCR 7.215(J)(1) provides that "[a] panel of the Court of Appeals must follow *the rule of law established by* a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule." (Emphasis added.) But *Chapdelaine* did not establish a rule of law that reasonable necessity is required to establish an easement by necessity. It is axiomatic that this Court does not have the authority to recant the Supreme Court's positions. *DeFrain v State Farm Mut Auto Ins Co*, 491 Mich 359, 371; 817 NW2d 504 (2012). Again, only the Supreme Court has the authority to overrule one of its prior decisions. *Paige*, 476 Mich at 524. Because a legal rule requiring reasonable necessity would be inconsistent with the Supreme Court's rule of law requiring strict necessity, *Chapdelaine* could not and did not recant the Supreme Court's rule of law requiring strict necessity. See *id.*; *DeFrain*, 491 Mich at 371. Consequently, *Chapdelaine* did not establish a rule of law. As such, MCR 7.215(J)(1) is not triggered in this case and MCR 7.215(J) does not require this Court to convene a conflict panel.

IV. ENTITLEMENT TO AN EASEMENT BY NECESSITY

Having determined that strict necessity is required to establish an easement by necessity, we now turn to whether the trial court erred by (1) extinguishing the Bearce appellants' easement rights and (2) limiting the Murray plaintiffs' easement rights to an easement by necessity for winter emergency-vehicle access for the benefit of only lots 9 through 19. We hold that there is no strict necessity in this case and, therefore, that neither the Bearce appellants nor the Murray plaintiffs are entitled to an easement by necessity. The trial court erred to the extent that it concluded otherwise.

### A. STANDARD OF REVIEW

We review a trial court's findings of fact in a bench trial for clear error and its conclusions of law de novo. *Chelsea Investment Group LLC v City of Chelsea*, 288 Mich App 239, 250; 792 NW2d 781 (2010). "A finding is clearly erroneous if there is no evidentiary support for it or if this Court is left with a definite and firm conviction that a mistake has been made." *Id.* at 251. "The trial court's findings are given great deference because it is in a better position to examine the facts." *Id.* Furthermore, we review questions of law de novo. *Thomas M Cooley Law Sch*, 300 Mich App at 254.

### B. THE BEARCE APPELLANTS' ENTITLEMENT TO AN EASEMENT

The Bearce appellants argue that the trial court erred by extinguishing their easement rights on the basis of cessation of necessity. They contend that their easements are easements implied from a quasi-easement and, thus, are appurtenant and run with the land so that analyzing the degree of necessity is unnecessary. However, the easements in this case are ease-

ments by necessity for the reasons previously discussed. Therefore, the Bearce appellants' argument on this basis fails. The Bearce appellants alternatively argue that if the easements are easements by necessity, the trial court erred by extinguishing their "social easement." According to the Bearce appellants, the 1934 decree "expressly implied" a social easement between the lots by acknowledging the need for interaction among neighbors. We disagree.

The Bearce appellants do not provide this Court with any legal authority regarding a "social easement," let alone legal authority standing for the proposition that an easement merely for interaction with neighbors can constitute an easement by necessity. Appellants may not merely announce their position with no citation of supporting authority and, thus, leave it to this Court to discover and rationalize the basis for their claims. See *Houghton v Keller*, 256 Mich App 336, 339; 662 NW2d 854 (2003). Regardless, the 1934 decree does not support the Bearce appellants' claim that the court ordered a "social easement," i.e., an easement to allow the neighbors to socialize. The court's order was limited to a right of way "for the purposes of ingress and egress to and from the public highways in said Township of Tuscarora . . . ." Although the decree refers to the existing trail when stating that "there is no other practical means by which . . . the occupants [of lots 1 through 34] can communicate among themselves," the only purpose of the right of way by necessity ordered by the court was for ingress and egress to and from the public highways; the court's order did not include socializing with neighbors as a purpose.

As previously discussed, an easement by necessity "ceases to exist when the necessity for its continuance ceases." *Waubun Beach*, 274 Mich at 609. Here, the trial

court found that the Bearce appellants' necessity for ingress and egress over defendant's property to go to and from public highways ceased to exist because the lots south of defendant's property had access to a public road and, furthermore, had a relatively level road available to them to access their lots without crossing defendant's property. The court also found that the Futrells, even in the winter, could access their property using their private drive without traversing lots to the north or south. The Bearce appellants do not challenge these findings. On the basis of these findings, the trial court's judgment extinguished the easement rights awarded in the 1934 decree to the extent that "the party/owners, invitees, and assigns of Lot 20 and the north one-half of Lot 21 shall not traverse or go upon the south one-half of Lot 23 and Lots [24-29 and 32-34], and the party/owners, invitees, and assigns of the south one-half of Lot 23 and Lots [24-29 and 32-34] shall not traverse or go upon Lot 20 and the north one-half of Lot 21 . . . ." The Bearce appellants have not established that the trial court erred by entering this judgment.

Accordingly, the trial court did not err in case number 08-007889-CH by extinguishing the easement by necessity over defendant's property.

### C. THE MURRAY PLAINTIFFS' ENTITLEMENT TO AN EASEMENT

The Murray plaintiffs contend that they are entitled to an easement by necessity over defendant's lots in the winter for purposes of general vehicular traffic, or at the very least, emergency-vehicle access. Thus, the Murray plaintiffs argue that the trial court erred by concluding that they are not entitled to an easement by necessity for general vehicular traffic over defendant's lots, erred by concluding that lots 4 through 8 do not have an easement by necessity over defendant's prop-

erty for wintertime emergency-vehicle access, and correctly awarded the easement by necessity over defendant's lots for winter emergency-vehicle access for the benefit of lots 9 through 19. We disagree.

An analysis of this issue first requires this Court to determine the easement rights of the owners of lots 4 through 19 following the Supreme Court's decision in *Waubun Beach*. In *Waubun Beach*, 274 Mich at 601, the Supreme Court stated that the 1934 decree awarded a way of necessity for the owners of lots 1 through 34 across each others' lots for purposes of ingress and egress to and from public highways. The only party to appeal to the Supreme Court was the MacClures, who owned lots 4, 5, 7, 8, 35 through 38, and 42 through 51. *Id.* at 601-602. The *Waubun Beach* Court explained that at the time the bill of complaint was filed,

> appellants had not only constructed roads from their lots to the public highway along the section line between sections 1 and 2, but had opened a way across their own premises from lot 35 to the highway, running south of the plat, which was open and used; so that at the time of the filing of the bill of complaint plaintiffs had a right of way to this section line road, as had the owner of lot 6. The owners of lots 1, 2 and 3 had a way to their premises over the lands lying north thereof, and persons owning lands south of those owned by appellants had a way to lot 35 . . . and were given an extension of the right of way for temporary use at least for a period of three years from there to the highway south of the premises by appellants . . . . [*Id.* at 615.]

The Court therefore held:

> [A]t the time of the filing of the bill of complaint, all of the parties owning property in the plat had a way to reach their premises without passing over the lands of appellants. Having such way, no right of way of necessity existed over the lands and premises of appellants.

> The decree of the trial court is reversed as to appel-
> lants . . . . [*Id.*]

Although the Court discussed how all the parties had access to their property, including the MacClures' installation of roads from their lots to a public highway, the Court's holding was limited to the existence of a right of way over the MacClures' lands. It is clear that the Court extinguished the easement by necessity that permitted the owners of lots 1, 2, 3, 6, and 9 through 34 to traverse MacClure lots 4, 5, 7, and 8. See *id.* ("[N]o right of way of necessity existed over the lands and premises of appellants."). However, by limiting its holding to the existence of a right of way over the Mac-Clures' lands, the Court did not extinguish the rights of the owners of lots 1, 2, 3, 6, and 9 through 34 to traverse each others' lots for ingress and egress to and from public highways. Moreover, although the Court reversed the 1934 decree "as to appellants," the Court did not extinguish the MacClures' right, i.e., the right of the owners of lots 4, 5, 7, and 8, to traverse lots 1, 2, 3, 6, and 9 through 34 for ingress and egress to and from public highways. The owners of lots 1, 2, 3, 6, and 9 through 34 were not appellants in *Waubun Beach* and, thus, were not afforded relief. See *Nelson & Witt v Texas Co*, 256 Mich 65, 69; 239 NW 289 (1931) ("From the judgment against it the United Company has not appealed, so that feature of the case calls for no discussion, this appellate court not being concerned with errors which may have been committed against a nonappealing party."); *Johnston Realty & Investment Co v Grosvenor*, 241 Mich 321, 324; 217 NW 20 (1928) (explaining that relief will not be granted by an appellate court on behalf of a party who has not appealed).

Thus, in light of *Waubun Beach* and assuming that a strict necessity for an easement still existed, all the

Murray plaintiffs had an easement by necessity to traverse defendant's property for purposes of ingress and egress to and from the public highways. The *Waubun Beach* Court did not extinguish the easement rights of the owners of lots 4 through 19 to traverse the lots now owned by defendant (lot 20 and the portion of lot 21 excluding the southeasterly 30 feet); it only extinguished the rights to traverse the lots owned by the MacClures, here, the lots owned by the Charles A. Murray Trust and the Ganos. Therefore, the trial court erred by placing the burden on the trust and the Ganos, the owners of lots 4 through 9, to show the existence of an easement by necessity. Defendant bore the burden of establishing that the necessity for the Murray plaintiffs' easement had ceased to exist.

As previously discussed, the requirement for an easement by necessity is that of strict or absolute necessity, and an easement by necessity ceases to exist when the necessity ceases. *Waubun Beach*, 274 Mich at 608-609, 611; see also *Schmidt*, 94 Mich App at 732-733. The *Waubun Beach* Court explained that an easement by necessity is not a right of way of mere convenience. *Waubun Beach*, 274 Mich at 609, 611-612. The necessity ceases when another way has been acquired. *Id*. at 610. Indeed, the Court expressly stated that Michigan "has never recognized the doctrine that the mere fact that one has to go upgrade in getting to or from his land or that he would have to make or improve a way therefrom, gave him a right to a way of necessity." *Id*. at 611; see also *Schadewald*, 225 Mich App at 41 n 4 ("The lack of any access except over a steep grade is insufficient to establish an easement by necessity."). In 1998, our Supreme Court opined that a claim for an easement by necessity fails if the property at issue is not landlocked; in such a situation, there is "no true necessity." *Forge*, 458 Mich at 211 n 38, citing *Goodman*, 219 Mich at 59.

Here, the trial court found that the parties had access from their lakefront lots back to the country road and that the parties had driveways installed from the county road to access their lakefront lots. We are not definitely and firmly convinced that the trial court mistakenly found these facts. See *Chelsea Investment Group LLC*, 288 Mich App at 251. In light of these facts, there was not a strict necessity in this case. The Murray plaintiffs were not landlocked. See *Forge*, 458 Mich at 211 n 38. Each of the Murray plaintiffs had a driveway to Chippewa Beach Road. Thus, each of the Murray plaintiffs and any emergency responders had public-highway access to and from the Murray plaintiffs' property without traversing defendant's property. Indeed, the Murray plaintiffs and any emergency responders had access to the Murray plaintiffs' properties from a public highway simply because the Murray plaintiffs' driveways are on the Murray plaintiffs' properties.[10] Use of defendant's property was not strictly necessary for purposes of ingress and egress to and from a public highway. This was true even in the winter when there was snow and ice accumulation. The snow and ice accumulation only impacts the ability to traverse the Murray plaintiffs' properties via driveways when vehicles *have already accessed* the respective property. Simply put, this is not a case about inability to access the Murray plaintiffs' properties; this is a case about access to a *particular part* of the properties—the part of the properties where homes and cottages are located— and the most convenient way of doing so. Even if it was more convenient for the Murray plaintiffs and emer-

---

[10] Thus, the trial court clearly erred by finding that emergency vehicles such as ambulances and fire trucks cannot access the lots during the winter when significant amounts of snow and ice are present. Indeed, David Carpenter only testified that ambulances and fire trucks could not get down the driveways in the winter.

gency responders to access the cottages and homes in the winter by traversing defendant's property instead of using a driveway, an easement by necessity is not an easement of convenience. *Waubun Beach*, 274 Mich at 609, 611-612. Again, Michigan "has never recognized the doctrine that the mere fact that one has to go upgrade in getting to or from his land or that he would have to make or improve a way therefrom, gave him a right to a way of necessity." *Id.* at 611; see also *Schadewald*, 225 Mich App at 41 n 4 ("The lack of any access except over a steep grade is insufficient to establish an easement by necessity.").

Accordingly, we conclude that the trial court erred in case number 07-007789-CH by awarding an easement by necessity when no strict necessity existed.[11]

## V. CONCLUSION

We hold that an easement by necessity no longer exists because there is no longer a strict necessity for its existence. The trial court erred in case number 07-007789-CH by awarding an easement by necessity when

---

[11] We decline to address the Murray plaintiffs' argument that the trial court's failure to award them an easement by necessity over the defendants' lots for general vehicular traffic violated their liberty to contract and right to freedom of association under the United States Constitution. Not only are these issues unpreserved because they are raised for the first time on appeal, they are abandoned because they have been presented in a cursory fashion, with little citation to supporting authority, and without any meaningful discussion of liberty-to-contract and freedom-of-association principles. See *Booth Newspapers, Inc v Univ of Mich Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993) ("Issues raised for the first time on appeal are not ordinarily subject to review."); *Wiggins v City of Burton*, 291 Mich App 532, 574; 805 NW2d 517 (2011) ("We decline to address this issue for the first time on appeal."); *Barrow v Detroit Election Comm*, 301 Mich App 404, 418 n 6; 836 NW2d 498 (2013) (concluding that a constitutional argument was abandoned because it was given cursory treatment).

no strict necessity existed. However, the trial court properly extinguished the easement by necessity in case number 08-007889-CH.

We affirm in part and reverse in part the trial court's judgment in case number 07-007789-CH. We affirm the trial court's judgment in case number 08-007889-CH.

WILDER, P.J., and DONOFRIO, J., concurred with BECKERING, J.