*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

GODFREY LEGHU, MARY STEWART,
CAJETAN KIMFON, and
COUNTRY SQUARE ADULT FOSTER CARE
LLC,

        Plaintiffs-Appellees,

v

MARK LANDOSKY,

        Defendant-Appellant,

and

JOHN ROBBINS and CYNTHIA ROBBINS,
Defendants.

UNPUBLISHED
December 7, 2023

No. 361254
Bay Circuit Court
LC No. 21-003078-CH

Before: LETICA, P.J., and HOOD and MALDONADO, JJ.

PER CURIAM.

Defendant, Mark Landosky, appeals by right the trial court's order granting a permanent injunction barring defendant from taking any action that would obstruct Country Square Adult Foster Care, LLC, (hereinafter: "the Foster Care Center") from using the driveway on his property.[1] Defendant argues that the trial court erred by concluding that plaintiffs had an implied easement in his driveway. We reverse.

## I. BACKGROUND

This case revolves around a 30-foot wide driveway on defendant's property ("the South Parcel") that directly abuts the boundary with plaintiffs' property ("the North Parcel"). Previously, both parcels were owned and operated by Rodger and Virginia Landosky, the parents of Mark Landosky and Cynthia Robbins. Rodger and Virginia opened the Foster Care Center in 1987, and

---

[1] John and Cynthia Robbins were also named as defendants in this case; however, a default judgment was entered against them, and they are not parties to this appeal.

since its inception, the driveway has been used to access the parking lot and accessible entry ramps on the back of the building. The North Parcel, along with the Foster Care Center, was sold to Cynthia Robbins and her husband John Robbins (collectively: "the Robbins defendants") in 2001, and the South Parcel, which is primarily used as farmland, was sold to defendant in September 2019. The Robbins defendants were eventually hit with hard times, and in October 2019, without defendant's knowledge, they sold the North Parcel to plaintiff Kimfon.

Plaintiff Kimfon and his wife, plaintiff Stewart, have operated the Foster Care Center since the 2019 purchase, and have at all relevant times used the driveway for ingress and egress to the parking lot and ramps. Meanwhile, defendant has continued the South Parcel's farming operations and has used the driveway primarily for access to farm building on that area of the property. The parties apparently began to clash when plaintiffs discovered that there were buildings on defendant's farm that used the North Parcel's electricity. Plaintiffs requested that defendant cease and desist usage of their electricity, and when he did not respond to their demands, plaintiffs cut off power to the relevant buildings. Defendant subsequently erected a barricade that prevented plaintiffs' access to the South Parcel's driveway and has expressed his intention to construct permanent fencing. Plaintiffs believe that this act was done in retaliation over the electricity shutoff, while defendant maintains that there were ongoing problems with plaintiffs' residents wandering onto the South Parcel. Regardless, the parties took their dispute to the courts to determine whether there was an easement in the driveway.

Plaintiffs filed a claim seeking to quiet title and enjoin defendant from interfering with their usage of the driveway. According to plaintiffs, the Robbins defendants, against whom they brought alternative claims of fraud, orally assured them that there was an easement in the driveway. Plaintiffs further relied on the facts that the driveway has always been used for ingress and egress to the ramps and that it would cost more than $90,000 to construct a new driveway. Defendant alleged that the Foster Care Center's usage of the driveway was by permission only, and his argument leaned heavily on the fact that there was no written evidence of an easement. According to defendant, there was no "necessity" for an implied easement because there was ample space on the North Parcel to construct a new driveway. Moreover, defendant argued that common ownership of the parcels was not sufficient for the formation of an implied easement because the parcels were always distinct; the North Parcel was never severed from the South Parcel, and defendant argued that the formation of an easement requires the division of one parcel into two parcels.

The trial court granted summary disposition in favor of plaintiffs and subsequently, entered a permanent injunction that barred defendant from interfering with plaintiffs' usage of the driveway. This appeal followed.

## II. DISCUSSION

## A. EASEMENT

Defendant argues that the trial court erred by concluding that there was an easement because common ownership alone is insufficient to establish unity of title. We agree.

-2-

The existence of an implied easement is a question of law that this Court reviews de novo. *Murray Trust v Futrell*, 303 Mich App 28, 41; 840 NW2d 775 (2013).

There are two types of implied easements that have been recognized in Michigan: "(1) an easement by necessity and (2) an easement implied from a quasi-easement." *Murray Trust*, 303 Mich App at 41. An easement by necessity arises when one property is landlocked, *Id.*, and the parties agree that such is not the case here. "In contrast, an easement implied from a quasi-easement requires that *at the severance of an estate* an obvious and apparently permanent servitude already exists over one part of the estate and in favor of the other. It also requires a showing of reasonable necessity." *Id.* at 42 (quotation marks, citation, and alteration omitted; emphasis added).

> Thus, three things must be shown: (1) that during the unity of title an apparently permanent and obvious servitude was imposed on one part of an estate in favor of another, (2) continuity, and (3) that the easement is reasonably necessary for the fair enjoyment of the property it benefits. Our Supreme Court has explained that a continuous easement is one which may be enjoyed without any act upon the part of the party claiming it. A noncontinuous easement is one to the enjoyment of which the act of the party is essential, and of this class a way is the most usual. [*Id.* (quotation marks, citations, and alterations omitted).]

As defendant aptly notes, the first element is actually two-in-one: there must be unity of title as well as a permanent and obvious servitude. *Id.*

The first element—unity of title—is disputed in this case. The parties agree that this is not a case in which an easement was created by virtue of the division of one parcel of land; nevertheless, plaintiffs argue that, for the purposes of an easement implied from quasi-easement, the common ownership of the North and South Parcels by Rodger and Virginia Landosky was sufficient to satisfy the unity of title element. Their argument relies on the Michigan Supreme Court's 1959 decision in *Rannels v Marx*, 357 Mich 453; 98 NW2d 583 (1959). In that case, a man named George Morehouse owned two adjoining but distinct lots that each had a house and a garage. *Id.* at 454. The two garages were accessible via a shared driveway that Morehouse constructed between the two houses. *Id.* Morehouse sold the two lots to separate purchasers, Miller and Duffy, who continued the shared use of this driveway to access their respective garages. *Id.* at 455. The plaintiff purchased Duffy's lot in 1937 and continued using the shared driveway. *Id.* Miller's lot was inherited by Walker who then sold it to the defendants in 1952. *Id.* In 1955, the defendants located "the property line, moved the steps and front door of their house so that the driveway could be expanded on their side, and put in a curb roughly on the property line to keep [the plaintiff] and her tenants from using the former joint driveway." *Id.* The plaintiff immediately sued the defendants, and the trial court ruled in her favor based "upon the doctrine of implied easements." *Id.* at 456. The Supreme Court agreed, reasoning that "[t]his is an instance where previous use in possession of the common grantor was visible, apparent even to a casual observer, continuous, and necessary to convenient use of the property." *Id.* at 458. Thus, the existence of a common grantor—Morehouse—was sufficient to satisfy the "unity of title" requirement irrespective of the existence of two distinct lots. *Id.* at 454, 456, 458.

While *Rannels* would support plaintiffs' position if it were controlling, we conclude that it has been superseded by more recent Supreme Court caselaw. In *Forge v Smith*, 458 Mich 198, 200; 580 NW2d 876 (1998), the defendants "were co-owners of six contiguous lots in the city of Detroit," described as lots 19 to 24. Lots 22 to 24 were leased to plaintiff while lots 19 to 21 were leased to Susheel Bery. *Id*. Lot 21 was left vacant, and Bery used it for ingress and egress by her customers. *Id*. In 1987, plaintiff built a bar and grill on lots 22 to 24, and his customers parked their cars on lot 21. In 1991, Bery's business went defunct, and her lease was assigned to a group who planned to open a car repair business. *Id*. at 201. "As part of the lease-assignment agreement, the landlords agreed to provide parking curb blocks to prevent [the plaintiff's] customers from parking on lot 21." *Id*. The plaintiff sued, arguing that he had an easement for the use of lot 21. *Id*. at 201-202.

The majority of the Supreme Court's analysis in *Forge* is inapplicable to the present case because the plaintiff argued that he had an *express* easement, and the analysis involved the applicability of the statute of frauds in the context of express easements. *Id*. at 206-210. However, the Supreme Court made the following comment at the conclusion of its analysis on the plaintiff's interest in lot 21: "The theory of easement by express grant was the only theory presented to the jury and the only theory preserved for review. Moreover, we hold that, under the facts of this case, no easement interest was created by operation of law." *Id*. at 211. The Supreme Court included a footnote briefly explaining the basis for this comment:

> A claim of prescriptive easement would fail because, at a minimum, plaintiff has failed to use lot 21 for the requisite fifteen-year prescriptive period. A claim of easement by necessity would fail because there is no true necessity, as plaintiff is not landlocked. Finally, a claim of implied easement would also fail. *A claim of implied easement arises where two or more tracts of property are created from a single tract*, and the use of the servient estate for the benefit of the dominant estate is apparent, continuous, and necessary. *Rannels v Marx*, 357 Mich 453; 98 NW2d 583 (1959). *In this case, the lots were already distinct at the time of the alleged grant*, and there is no necessity. [*Id*. at 211 n 38 (citations omitted; emphasis added).]

In other words, the Supreme Court concluded that an implied easement requires the division of a single lot; however, it supported this conclusion with a citation to a case in which an implied easement was recognized as having arisen from the common ownership of two distinct lots. *Id*. Admittedly, we are perplexed by the Supreme Court's citation to *Rannels* to support an assertion opposite to *Rannels* conclusion. Nevertheless, the statement is unambiguous; for an easement to be implied from a quasi-easement, two tracts must be formed from a single tract. In *Forge*, while there are questions about its usage of *Rannels*, there is no question that the Supreme Court viewed the fact that "the lots were already distinct" as dispositive. *Forge*, 458 Mich at 211.

Therefore, we conclude that there is no easement.

## B. CROSS-CLAIM

In the trial court, defendant brought a motion to amend his pleadings in order to add a cross-claim against the Robbins defendants premised on their allegedly fraudulent representations

to plaintiffs regarding the existence of an easement. The trial court denied this motion, reasoning that the court's conclusion that there was an easement rendered the motion moot. The obvious barrier to allowing defendant to assert a cross-claim of fraud against the Robbins defendants is whether defendant has standing to assert a claim of fraud arising from actions that the Robbins defendants took against plaintiffs. However, the trial court has not addressed this issue, so there can be no error for us to cure. See *King v Mich St Police Dep't*, 303 Mich App 162, 188; 841 NW2d 914 (2013) ("The doctrine of ripeness is designed to prevent the adjudication of hypothetical or contingent claims before an actual injury has been sustained." (quotation marks and citation omitted)). Therefore, if defendant chooses to pursue these claims against the Robbins defendants on remand, the trial court shall revisit this motion in light of our conclusion that there is no easement.

## III. CONCLUSION

The trial court's orders granting summary disposition in favor of plaintiffs and enjoining defendant from obstructing plaintiffs' usage of the driveway are reversed. The case is remanded for additional proceedings. On remand, the trial court shall quiet title to the driveway in defendant's favor, and it shall reconsider defendant's motion to bring a cross-claim against the Robbins defendants. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Noah P. Hood
/s/ Allie Greenleaf Maldonado