# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALLAN WAYNE SHANK,

Defendant-Appellant.

FOR PUBLICATION
November 17, 2015

No. 321534
Presque Isle Circuit Court
LC No. 12-092763-FC

Before: BORRELLO, P.J., and HOEKSTRA and O'CONNELL, JJ.

O'CONNELL, J. (*dissenting*).

Defendant, Allan Wayne Shank, is a serial sexual offender with eight felony convictions. After Shank engaged in a disturbing photograph exchange with an inmate, police searched his home and found firearms. His most recent convictions are felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. The sentencing guidelines recommended a sentence of 7 to 46 months' imprisonment. The trial court departed upward from this recommendation, sentencing Shank to serve 12 to 25 years' imprisonment for his felon in possession conviction and a consecutive term of two years' imprisonment for his felony-firearm conviction. Because I conclude that this Court need look no further than *People v Lockridge*, ___ Mich ___; ___ NW2d ___ (2015) to resolve this case, I would affirm.

## I. STANDARD OF REVIEW

In *Lockridge*, the Michigan Supreme Court stated that this Court should review a trial court's sentence for reasonableness. *Id*. at ___; slip op at 29.[1] The "reasonableness" review "merely asks whether the trial court abused its discretion[.]" *Rita v United States*, 551 US 338, 351; 127 S Ct 2456; 168 L Ed 2d 203 (2007). In *Steanhouse*, this Court acknowledged that this Court should review sentences for an abuse of discretion. See *Steanhouse*, ___ Mich App at ___; slip op at 23 (stating that a sentence may constitute an abuse of discretion if it violates principles

---

[1] The *Lockridge* Court adopted the reasonableness standard from *United States v Booker*, 543 US 220, 263; 125 S CT 738; 160 L Ed 2d 621 (2005). *Lockridge*, ___ at ___; slip op at 29.

of proportionality). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Reese*, 491 Mich 127, 139; 815 NW2d 85 (2012).

## II. APPLICATION OF *LOCKRIDGE*

The *Lockridge* question in this case is whether Shank is entitled to resentencing. Shank contends on appeal that the trial court engaged in improper judicial fact-finding under *Alleyne*.[2] The answer to this question hinges on whether Shank, who failed to preserve an *Alleyne* claim below, has shown plain error. I conclude that *Lockridge* addresses the question in this case perfectly and answers it in the negative. Shank is not entitled to resentencing.

If a defendant does not challenge the scoring of his offense variables (OVs) at sentencing on *Alleyne* grounds, our review is for plain error affecting that defendant's substantial rights. *Lockridge*, ___ Mich at ___; slip op at 30. In this case, Shank did not challenge the scoring of his OV scores on *Alleyne* grounds. Our review is for plain error.

To be entitled to relief under plain error review, a defendant must show that the error affected the outcome of the lower court proceedings. *Id.* The *Lockridge* court aptly stated the application of the plain error doctrine in cases—like Shank's—where the defendant did not preserve an *Alleyne* challenge below and the trial court departed upward:

> Because [the defendant] received an upward departure sentence that did not rely on the minimum sentence range from the improperly scored guidelines (and indeed, the trial court necessarily had to state on the record its reasons for departing from that range), *the defendant cannot show prejudice from any error* in scoring the OVs in violation of *Alleyne*. [*Id.* at ___; slip op at 31 (emphasis added).]

If a defendant's minimum sentence involved an upward departure, that defendant "necessarily cannot show plain error . . . ." *Id.* at ___; slip op at 32 n 31. "It defies logic that the court in those circumstances would impose a lesser sentence had it been aware that the guidelines were merely advisory." *Id.*

In this regard, the *Steanhouse* court's decision to remand in that case was contrary to the precepts of stare decisis. Like in *Lockridge*, the defendant in *Steanhouse* did not challenge the scoring of his OVs on *Alleyne* grounds. *Steanhouse*, ___ Mich App at ___; slip op at 21. As in *Lockridge*, the trial court in *Steanhouse* departed upward from the recommended sentencing range. *Id.* The *Steanhouse* court recognized that the defendant could not establish a plain error under *Lockridge*. However, the court proceeded to review the defendant's sentence and remand for resentencing anyway, directly contrary to the language of *Lockridge* providing that a defendant was not entitled to resentencing under the exact same circumstances.

---

[2] *Alleyne v United States*, 570 US ___; 133 S Ct 2151; 186 L Ed 2d 314 (2013). In *Alleyne*, the United States Supreme Court held that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." *Id.* at ___; 133 S Ct at 2155.

I would follow *Lockridge* without declaring a conflict panel. The reason is simple—this Court need not convene a conflict panel to follow a rule articulated by the Supreme Court, even if a decision of this Court conflicts with the Supreme Court's decision. *Charles A Murray Trust v Futrell*, 303 Mich App 28, 49; 840 NW2d 775 (2013). Until the Supreme Court's decision is overruled by the Supreme Court itself, the rules of stare decisis require this Court to follow its decision. *Paige v City of Sterling Heights*, 476 Mich 495, 524; 720 NW2d 219 (2006). This Court simply "does not have the authority to recant the Supreme Court's positions." *Murray Trust*, 303 Mich App at 49. Under the rule of stare decisis, this Court must follow a decision of the Supreme Court even if another panel of this Court decided the same issue in a contrary fashion. *Id*. Because *Steanhouse* ignored the clear directives of the Michigan Supreme Court, it is against the rules of stare decisis to follow the procedures in that case. I cannot in good conscience violate the rules articulated in *Lockridge*.

A remand under *United States v Crosby*, 397 F 3d 103 (CA 2, 2005), is necessary to determine whether prejudice resulted from an error. *People v Stokes*, ___ Mich App ___ ; ___ NW2d ___; (2015) slip op at 11. The *Lockridge* court stated that no prejudice could result from the type of "error" involved in this case.[3] Shank cannot show plain error; therefore, he is not entitled to relief. I conclude that a *Crosby* remand is not appropriate or necessary in this case.

## III. DUE PROCESS

Shank also raises a due process issue, contending that the trial court may not consider his conduct of sending photographs of a young child to Hilliard, an inmate and sex offender, because the prosecutor dropped the charge for possession of child sexually abusive material (child pornography). The majority does not reach this issue because it concludes that remand is appropriate. Because I would not remand, I will address this issue.

It is fundamentally unfair for the prosecution to drop a charge while engaging in plea negotiations, only to "resurrect it at sentencing in another form." *People v McGraw*, 484 Mich 120, 134; 771 NW2d 655 (2009). That is not what happened in this case.

In this case, the prosecution dropped a charge for possessing child sexually abusive material. The trial court did not rely on the sexually abusive photograph, but instead focused on how Shank's conduct—grooming an acquaintance's child and sending photographs of that child and a pregnant seven-year-old to Hilliard, who was incarcerated for molesting children—showed that he had very little rehabilitative potential and posed a danger to the community. I conclude that the trial court did not violate Shank's due process rights.

## IV. PROPORTIONALITY

---

[3] I am concerned about questions of judicial economy implicit in blindly affording *Crosby* remands to every sentencing question that is raised before this Court post-*Lockridge*, particularly when challenges to those sentences are unpreserved.

Shank also raises a proportionality question unrelated to the application of *Lockridge* and *Alleyne*—he contends that the trial court's lengthy sentence was not proportional because it was not justified by the circumstances of his crime. Again, I disagree.

Even when the sentencing guidelines were mandatory, the "key test" of a sentence was whether it was proportionate to the seriousness of the matter, rather than whether it strictly adhered to a guidelines range. *People v Milbourn*, 435 Mich 630, 661; 461 NW2d 1 (1990). "[P]unishment should be made to fit the crime and the criminal." *People v Babcock*, 469 Mich 247, 262; 666 NW2d 231 (2003). One purpose of the sentencing guidelines is to facilitate proportional sentences. *People v Smith*, 482 Mich 292, 321; 754 NW2d 284 (2008).

The trial court stated extensive reasons for why Shank's sentence was proportional. It gave these reasons under a now-defunct label of "substantial and compelling reasons,"[4] but the fact that the sentencing guidelines are no longer mandatory does not negate that the trial court in this case did in fact consider the proportionality of its sentence. The trial court considered Shank's criminal history, his conduct leading to the charges in this case, and his failure to rehabilitate. Specifically, it found that Shank lacked rehabilitative potential. He was previously incarcerated for accosting minors, but his uncharged conduct raised serious concerns that he would continue to engage in that behavior. Shank violated his probation and parole, including by possessing firearms, and while he was imprisoned he engaged in poor behavior. And Shank continued to pose a danger to children and the community because he could not or would not be rehabilitated. Under these facts, I conclude that the trial court's sentence fell within the range of principled outcomes.

I would affirm.

/s/ Peter D. O'Connell

---

[4] The trial court need no longer articulate substantial and compelling reasons to justify a departure from the sentencing guidelines. *Lockridge*, ___ Mich at ___; slip op at 2. However, the trial court should still articulate reasons for why its sentence is more proportionate than a sentence within the guidelines range, even though these reasons need not be "substantial and compelling." See *Rita*, 551 US at 356 (stating that when determining the reasonableness of a sentence, courts should consider the sentencing court's reasons for departing from the guidelines); *Gall v United States*, 552 US 38, 50; 128 S Ct 586; 169 L Ed 2d 445 (2007) (stating that a more significant departure will require more justification to be upheld as proportional than a minor departure).