MULCAHY v VERHINES

Docket No. 275325. Submitted June 12, 2007, at Detroit. Decided
    September 25, 2007, at 9:00 a.m. Leave to appeal sought.

Thomas and Mary A. Mulcahy brought an action in the Wayne
    Circuit Court against John and Brenda Verhines, seeking the
    declaration of an easement on property of the defendants that
    adjoined the plaintiffs' property. William Verhines had origi-
    nally owned the lot on which both properties were located and,
    when he requested the city's approval to split the lot, had
    indicated that he intended reciprocal access and parking rights
    on the resulting two parcels. The city approved his site plan,
    contingent on an easement agreement concerning access to
    those properties. While William Verhines's attorney prepared a
    proposed agreement and forwarded it to the city, the city never
    responded to the attorney's letter, Verhines never signed or
    recorded the agreement, and the city never followed up on the
    matter. The deeds that split the lot did not refer to an easement.
    The defendants subsequently complained that parking on their
    parcel generated by the business on the plaintiffs' parcel
    burdened the use of the defendants' parking lot by the defen-
    dants' customers, which burdened the defendants' business.
    Consequently, the defendants blocked the access to their park-
    ing lot from the plaintiffs' parcel. The court, Wendy M. Baxter,
    J., denied the plaintiffs' motion for summary disposition and
    granted the defendants' motion for summary disposition, con-
    cluding that the element of hostility necessary to establish a
    prescriptive easement was lacking. The plaintiffs appealed.

    The Court of Appeals *held*:

    The trial court erred by granting summary disposition for the
    defendants. A prescriptive easement results from the use of
    another's property that is open, notorious, adverse, and continu-
    ous for 15 years. Use pursuant to the terms of an intended but
    imperfectly created servitude can establish a prescriptive ease-
    ment when all the other requirements for a prescriptive easement
    are met. Verhines intended to create an express easement for
    access and parking, and his counsel drafted a proposed easement
    agreement but the formal requirements were not met, given that

Verhines never signed or recorded the easement. Because the city approved the site plan and required an easement, Verhines was not at liberty to change his mind regarding the easement. Thus, he intended to create an easement but inadvertently failed to comply with the formal requirements. The plaintiffs used the defendants' lot pursuant to an intended but imperfectly created servitude. The plaintiffs' use of the property under these circumstances satisfied the element of adverse or hostile use necessary for a prescriptive easement. Moreover, the plaintiffs satisfied all the other elements necessary to establish a prescriptive easement.

Reversed and remanded for entry of summary disposition in the plaintiffs' favor.

1. EASEMENTS — PRESCRIPTIVE EASEMENTS — IMPERFECTLY CREATED SERVITUDES.

Use of another's property pursuant to the terms of an intended but imperfectly created servitude can establish a prescriptive easement when all the other requirements for a prescriptive easement are met; an intended but imperfectly created servitude can arise when a grantor intends to create an easement but inadvertently fails to comply with the formal requirements of signing and recording the easement.

2. EASEMENTS — PRESCRIPTIVE EASEMENTS — IMPERFECTLY CREATED SERVITUDES — ADVERSE OR HOSTILE USE.

Use of another's property pursuant to an intended but imperfectly created servitude is sufficient to establish the element of adverse or hostile use necessary for a prescriptive easement.

*Timothy J. Doyle* for the plaintiffs.

*Pear Sperling Eggan & Daniels, P.C.* (by *Karl V. Fink*), for the defendants.

Before: WHITBECK, C.J., and WILDER and BORRELLO, JJ.

PER CURIAM. In this property dispute, plaintiffs Thomas and Mary Alice Mulcahy appeal as of right an order granting summary disposition in favor of defendants John and Brenda Verhines pursuant to MCR 2.116(C)(10). We reverse and remand for entry of an order granting summary disposition in favor of plaintiffs.

## I. FACTS AND PROCEDURAL HISTORY

The property in dispute is a driveway and parking area located in the western half of Lot 1213 in "Avondale Subdivision No. 6" in Wayne County. Lot 1213 is split in half; plaintiffs own the eastern half of Lot 1213, as well as all of Lots 1214 and 1215, which are located east of Lot 1213, and defendants own the western half of Lot 1213 and all of Lots 1210, 1211, and 1212, which are located west of Lot 1213. Plaintiffs' property includes a muffler shop, and defendant's property includes a furniture restoration business. Michigan Avenue borders the southern edge of the lots, and a public alley borders the lots to the north. Before the present dispute arose, customers could access both businesses by entering the parking lot through a one-way entrance located on the southern edge of plaintiffs' property; customers would then exit the parking lot through an exit located at the northern edge of defendants' property.

Defendant John Verhines and plaintiff Mary Alice Mulcahy are siblings, and all the lots they own, including the property in dispute on the western half of Lot 1213, were originally owned by their now-deceased father, William I. Verhines. Before 1986, William Verhines owned and operated the furniture restoration business on the western half of Lot 1213.

In 1986, William Verhines sought the city of Wayne's approval of a site plan in which he proposed to split Lot 1213 and build a muffler shop on the eastern half of the lot. In his application to the city requesting the lot split, William Verhines explained that he wished "to split Lot 1213 in half for the purpose of granting reciprocal access and parking rights . . . ." According to John Zeck,[1] William Verhines intended for the muffler shop

---

[1] When William Verhines submitted his site plan, Zeck was the assistant city. manager and community development director. At the time of his deposition, John Zeck was the city manager for the city of Wayne.

to share the driveway and parking area that existed along the center line of Lot 1213 with the furniture restoration business located on the western half of Lot 1213. In August 1986, the city approved the site plan, subject to eight contingencies that William Verhines had to comply with in completing the site plan. One of the contingencies was that "[t]he lot split must be finalized, including an easement agreement regarding the approach off of Michigan Avenue by the time that the muffler shop is ready for occupancy." The city stated that its building department would follow up on "the inspection of [the] site plan and contingencies." William Verhines deeded plaintiffs the eastern half of Lot 1213 and all of Lots 1214 and 1215 in December 1986, but the deed made no mention of the existence of an easement.

Counsel for William Verhines prepared a proposed easement agreement, a copy of which was sent to the city in August 1987. By its terms, the proposed easement was intended to grant a mutual "irrevocable nonexclusive easement over the parking areas, driveways and access drives" located on both halves of the property. In a letter that accompanied the proposed easement agreement, William Verhines's counsel explained that if the agreement was acceptable to the city, he would "secure the signing of it and recording so that Mr. Verhines can complete the requirements of the sight [sic] plan approval that was issued in August, 1986." However, for reasons that are unclear, the city never responded to counsel's letter, William Verhines never signed or recorded the easement agreement, and the city never followed up to ensure that the easement was executed and recorded. In January 1990, William Verhines deeded defendants the western half of Lot 1213 and all of Lots 1210, 1211, and 1212; the deed made no mention of the existence of an easement.

The present dispute arose over use of the driveway and parking area in the western half of Lot 1213. In 1987, plaintiffs had leased the muffler shop to David Bartell, who operates the muffler shop under the name "Muffler Dave's." Apparently, Bartell, who had always parked a few vehicles in defendants' parking lot, began parking what defendants characterize as an unreasonable number of cars on their portion of Lot 1213. According to defendants, Bartell's use of the parking lot became burdensome because Bartell parked so many cars on the lot that there was no room for defendants' customers to park and defendants' business suffered. Therefore, defendants petitioned for and received approval to create an entrance to their property off Michigan Avenue. Defendants then reconfigured the parking lot by placing cement blocks in such a way as to block or impede Bartell's access to the property and also sought permission from the city to construct a fence along the center of Lot 1213.

Plaintiffs filed a complaint against defendants, seeking to have "the court declare that an easement exist [sic] along the center line of Lot 1213 allowing continuous access to the . . . property." Plaintiffs also sought an injunction to prevent defendants from constructing anything on the western half of Lot 1213 that would prevent plaintiffs from accessing the property. Plaintiffs moved for summary disposition under MCR 2.116(C)(10), arguing that they had a prescriptive easement over the portion of Lot 1213 at issue. Plaintiffs contended that William Verhines had intended to create an express easement, but failed to comply with the formal requirements of establishing such an easement because the proposed easement drafted by his attorney was not signed and was not recorded. According to plaintiffs, a prescriptive easement is established when a use is made pursuant to the terms of an intended but

imperfectly created servitude. Defendants also moved for summary disposition. According to defendants, there was not an express easement, and there was not a prescriptive easement because plaintiffs' use of the property was permissive, plaintiffs and defendants mutually used the property, and the parties were not mistaken regarding the existence of an express easement.

The trial court denied plaintiffs' motion for summary disposition and granted defendants' motion under MCR 2.116(C)(10). According to the trial court, defendants asserted ownership rights that were inconsistent with plaintiffs' use of the property, and, therefore, the element of hostility necessary to establish the existence of a prescriptive easement did not exist for 15 continuous years.

## II. STANDARD OF REVIEW

An action for a prescriptive easement is equitable in nature. See *Killips v Mannisto*, 244 Mich App 256, 258; 624 NW2d 224 (2001). This Court reviews de novo the trial court's holdings in equitable actions. *Id.* In addition, this Court reviews the trial court's findings of fact for clear error. *Grand Rapids v Green*, 187 Mich App 131, 135-136; 466 NW2d 388 (1991).

This Court's review of a trial court's grant of summary disposition pursuant to MCR 2.116(C)(10) is as follows:

> This Court reviews de novo a trial court's grant or denial of summary disposition under MCR 2.116(C)(10). *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). A motion brought under MCR 2.116(C)(10) tests the factual support for a claim. *Downey v Charlevoix Co Rd Comm'rs*, 227 Mich App 621, 625; 576 NW2d 712 (1998). The pleadings, affidavits, depositions,

admissions, and any other documentary evidence submitted by the parties must be considered by the court when ruling on a motion brought under MCR 2.116(C)(10). *Downey, supra* at 626; MCR 2.116(G)(5). When reviewing a decision on a motion for summary disposition under MCR 2.116(C)(10), this Court "must consider the documentary evidence presented to the trial court 'in the light most favorable to the nonmoving party.' " *DeBrow v Century 21 Great Lakes, Inc (After Remand)*, 463 Mich 534, 539; 620 NW2d 836 (2001), quoting *Harts v Farmers Ins Exchange*, 461 Mich 1, 5; 597 NW2d 47 (1999). A trial court has properly granted a motion for summary disposition under MCR 2.116(C)(10) "if the affidavits or other documentary evidence show that there is no genuine issue in respect to any material fact, and the moving party is entitled to judgment as a matter of law." *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996). [*Clerc v Chippewa Co War Mem Hosp*, 267 Mich App 597, 601; 705 NW2d 703 (2005).]

### III. ANALYSIS

"An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years." *Plymouth Canton Community Crier, Inc v Prose*, 242 Mich App 676, 679; 619 NW2d 725 (2000); see MCL 600.5801(4). The burden is on the party claiming a prescriptive easement to show by satisfactory proof that the use of the defendant's property was of such a character and continued for such a length of time that it ripened into a prescriptive easement. *Prose, supra* at 679.

Citing this Court's opinion in *Prose*, plaintiffs argue that a prescriptive easement can be established by a use that is made pursuant to the terms of an intended but imperfectly created servitude. In *Prose*, this Court relied on the Restatement of Property, 3d, Servitudes, and held that a use that is made pursuant to the terms of an

intended but imperfectly created servitude can establish a prescriptive easement when all the other requirements for such an easement are met. *Id.* at 684-687. The Restatement of Property, 3d, Servitudes, provides as follows:

> A prescriptive use of land that meets the requirements set forth in § 2.17 creates a servitude. A prescriptive use is either
>
> (1) a use that is adverse to the owner of the land or the interest in land against which the servitude is claimed, or
>
> (2) *a use that is made pursuant to the terms of an intended but imperfectly created servitude*, or the enjoyment of the benefit of an intended but imperfectly created servitude. [1 Restatement Property, 3d, Servitudes, § 2.16, pp 221-222 (emphasis added).]

Comment a to § 2.16 of the Restatement of Property, 3d, Servitudes, provides, in relevant part:

> In the second situation, people try to create a servitude but fail, initially because they do not fully articulate their intent or reduce their agreement to writing, or because they fail to comply with some other formal requirement imposed in the jurisdiction. If they proceed to act as though they have been successful in creating the servitude, and continue to do so for the prescriptive period, the servitude is created by prescription if the other requirements of § 2.17 are met. In this second situation, prescription performs a title-curing function. [1 Restatement Property, 3d, Servitudes, § 2.16, comment a, p 222.]

According to plaintiffs, William Verhines intended to create an express easement, but, because he failed to sign or record the easement, the formal requirements for the establishment of the easement were not met. In 1986, counsel for William Verhines drafted a proposed easement agreement between William Verhines and plaintiffs "for the purpose of granting reciprocal access and parking rights" on the western half of Lot 1213.

Under the proposed easement agreement, William Ver-
hines would have granted plaintiffs a "nonexclusive
easement over the parking areas, driveways and access
drives" of the western half of Lot 1213. There is no
evidence regarding why William Verhines never signed
the proposed easement or why it was never recorded.
Were it not for the fact that the city, in approving
William Verhines's site plan for the construction of the
muffler shop on the eastern half of Lot 1213, required
William Verhines to establish an easement agreement,
we would be disinclined to assume that William Ver-
hines's failure to sign and record the easement agree-
ment was inadvertent, or a mistake or accident. With-
out the city's easement contingency and in the absence
of evidence to the contrary, we might simply conclude
that William Verhines consciously decided not to ex-
ecute the easement and that there was no title problem
to be cured. However, in light of the city's approval of
William Verhines's site plan and the city's requirement
that Verhines execute an easement, William Verhines
was not at liberty simply to change his mind regarding
the establishment of an easement. Indeed, in his letter
to the city, William Verhines's counsel stated that, upon
the city's acceptance of the easement agreement, he
would "secure the signing of it . . . ." The city appar-
ently did not follow up to ensure that the easement was
signed and recorded; nevertheless, we conclude that
William Verhines intended to create an easement but
inadvertently failed to sign and record the easement
agreement.

In sum, given the city's requirement that William
Verhines establish an easement and the fact that coun-
sel for William Verhines drafted a proposed easement
agreement in 1986, we are persuaded that William
Verhines intended to create an easement but inadvert-
ently failed to comply with the formal requirements

that he sign and record the easement. We are therefore persuaded that plaintiffs' and Bartell's use of the western half of Lot 1213 was made pursuant to an intended but imperfectly created servitude. See 1 Restatement Property, 3d, Servitudes, § 2.16, pp 221-222.

Plaintiffs argue that the trial court erred in concluding that they failed to establish the element of adverse or "hostile" use necessary for a prescriptive easement. We agree. The term "hostile," as used in the law of adverse possession, is a term of art and does not imply ill will. *Prose, supra* at 681. The claimant is not required to make express declarations of adverse intent during the prescriptive period. *Id.* Adverse or hostile use is use that is inconsistent with the right of the owner, without permission asked or given, that would entitle the owner to a cause of action against the intruder for trespassing. *Id.* The use of another's property qualifies as adverse if made under a claim of right when no right exists. *Id.*

In *Prose*, this Court recognized that use under an intended but imperfect express easement may establish a prescriptive easement and that such use satisfies the hostile- or adverse-use element of a prescriptive easement. *Id.* at 684-687. In *Cook v Grand River Hydroelectric Power Co, Inc*, 131 Mich App 821, 826; 346 NW2d 881 (1984), this Court also held that "if a claimant has obtained a conveyance of an easement which is ineffective, his use of the subservient estate, made on the assumption that the conveyance was legally effective, is adverse and not made in subordination to the owner of the burdened estate." Similarly, we conclude in this case that plaintiffs' and Bartell's use of defendants' property was sufficiently adverse to establish the element of hostile or adverse use required for a prescriptive easement.

There was also sufficient evidence regarding the remaining elements necessary to establish a prescrip-

tive easement. The evidence clearly shows that plaintiffs' and Bartell's use of defendants' property was open and notorious and that either plaintiffs or Bartell had used defendants' property for more than 15 years. Because plaintiffs satisfied all the elements necessary to establish a prescriptive easement, the trial court erred in granting summary disposition in favor of defendants.

Given our conclusion that the trial court erred in granting summary disposition in favor of defendants, we need not address plaintiffs' remaining issues on appeal.

Reversed and remanded for entry of an order granting summary disposition in favor of plaintiffs. We do not retain jurisdiction.