# STATE OF MICHIGAN

# COURT OF APPEALS

ANGELIQUE BRUENING,

        Plaintiff-Appellant,

v

CARLOS SANCHEZ and TERRY SANCHEZ,

        Defendants-Appellees.

UNPUBLISHED
November 24, 2015

No. 322822
Washtenaw Circuit Court
LC No. 13-000867-CH

ANGELIQUE BRUENING,

        Plaintiff-Appellee,

v

CARLOS SANCHEZ and TERRY SANCHEZ,

        Defendants-Appellants.

No. 323597
Washtenaw Circuit Court
LC No. 13-000867-CH

Before: METER, P.J., and BORRELLO and BECKERING, JJ.

PER CURIAM.

These consolidated appeals involve a property dispute between neighbors and a request for sanctions. In Docket no. 322822, plaintiff appeals the trial court order granting defendants' motion for a directed verdict and denying plaintiff's motion for injunctive relief. In Docket no. 323597, defendants appeal the trial court order denying their motion for sanctions under MCR 2.625. In both instances, we affirm the decisions of the trial court.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

### A. THE "ALLEY"

Plaintiff and defendants live on adjoining parcels on the shores of Joslin Lake in Lyndon Township. Both properties are located in the Home Wild Resort subdivision. Plaintiff resides at 5104 Joslin Lake Drive ("5104") and defendants reside at 5100 ("5100"). As situated, plaintiff's only access to her property is via a sidewalk running through 5100. However, the original 1923 plat map depicting the properties provided for a 10-foot wide "alley" running across the middle

-1-

of both properties to "Outlot 2," which borders defendants' parcel. Although termed an "alley," the 10-foot strip of land in question is better understood as a grassy strip of land that originates on Outlot 2 and runs across plaintiff's and defendants' lots. The alley has no visible borders on either side, and appears from photographs to merely be a part of the parties' respective front yards. On plaintiff's property, the alley was partially blocked at one time by a wooden deck attached to plaintiff's residence.

## B. PRIOR OWNERSHIP

We briefly set forth the prior ownership of the properties, as this ownership will become pertinent later in this opinion. In 1956, what is now known as 5100 and 5104 were owned by John and Catherine Hoban. The Hobans conveyed the lots to twin brothers Cletus and Clifford Busen. In 1962, Cletus and Clifford divided the lots into their current configuration, with Cletus and his wife Elise receiving 5104 and Clifford and his wife Roberta receiving 5100.

In 1979, Clifford and Roberta deeded 5100 to Jane Niemeyer. In 1980, Niemeyer deeded the property to herself, Clifford and Roberta, Daniel Busen, Michael Busen, and Ann Marie Busby. In 1997, the property was deeded to the Clifford W. Busen Revocable Trust. In 2004, defendants purchased 5100 from the Busen Trust. In 2005, the Busen Trust purported to convey by quitclaim deed the portion of the alley located along Lots 61 and 63, i.e., the 5100 property, to defendants.

In 1988, Elsie Busen sold her interest in 5104 to Matthew and Rita Busen. Matthew and Rita granted mortgages to D & N Bank and Ameriquest Mortgage Company. In 2001, Ameriquest foreclosed on the property, and then sold it to Republic Bank. In 2008, plaintiff purchased 5104 from Republic.

## C. THE INSTANT DISPUTE

When plaintiff purchased her property in 2008, there was fence along the border of defendants' property and Outlot 2. The fence had an opening that was approximately 10 feet wide; the parties stipulated however, that this opening was not the location of the platted alley.[1] Defendants constructed a fence on the border between their property and plaintiff's property sometime in 2012 or 2013 (thus crossing the area alleged to be the alley). The instant dispute arose in 2013 when defendants closed off the 10-foot-wide opening in the fence that ran between their property and Outlot 2. When defendants refused to re-open the gap in the fence, plaintiff brought suit seeking rights to use the platted alley for vehicular access to her property. Plaintiff claimed the right of vehicular access over the portion of the platted alley crossing defendants' property under various theories. In response to plaintiff's complaint, defendants primarily argued that their predecessors had long before gained title to the portion of the alley crossing 5100 by adverse possession. They asserted adverse possession only in their answer; they never filed a separate claim in regard to adverse possession.

---

[1] We note as much because plaintiff's brief on appeal at times conflates this opening with the disputed alley.

After a two-day bench trial, the trial court granted defendants' motion for a directed verdict[2] and entered an order declaring that plaintiff failed to establish any right to use, possess, or access the alley. In addition, the trial court stated that "in any event, such use, possession or access" was "lost by adverse possession" to defendants. Plaintiff appeals this order in Docket No. 322822. Subsequently, defendants moved for sanctions in the form of costs and attorney fees, arguing that plaintiff's claims were frivolous as devoid of arguable merit. The trial court denied the motion. Defendants appeal this order in Docket No. 323597.

## II. DOCKET NO. 322822

### A. STANDARD OF REVIEW

Because this was a bench trial, we treat defendants' motion for a "directed verdict" as a motion for involuntary dismissal. *Samuel D Begola Servs, Inc v Wild Bros*, 210 Mich App 636, 639; 534 NW2d 217 (1995). "The involuntary dismissal of an action is appropriate where the trial court, when sitting as the finder of fact, is satisfied at the close of the plaintiff's evidence that 'on the facts and the law the plaintiff has shown no right to relief.' " *Id.*, quoting MCR 2.504(B)(2). Unlike in a motion for a directed verdict, where credibility determinations are inappropriate, "a motion for involuntary dismissal calls upon the trial judge to exercise his function as trier of fact, weigh the evidence, pass upon the credibility of witnesses and select between conflicting inferences. Plaintiff is not given the advantage of the most favorable interpretation of the evidence. *Williamston Twp v Hudson*, __ Mich App __; __ NW2d __ (Docket No. 321306, released for publication July 2, 2015), slip op at 5-6 (citation and quotation marks omitted). "Following a bench trial, we review for clear error the trial court's factual findings and review de novo its conclusions of law." *Ligon v Detroit*, 276 Mich App 120, 124; 739 NW2d 900 (2007). "The clear error standard provides that factual findings are clearly erroneous where there is no evidentiary support for them or where there is supporting evidence but the reviewing court is nevertheless left with a definite and firm conviction that the trial court made a mistake." *Hill v City of Warren*, 276 Mich App 299, 308; 740 NW2d 706 (2007).

---

[2] Because this was a bench trial, the motion for a directed verdict would be more accurately described as a motion for involuntary dismissal under MCR 2.504. *Sands Appliance Servs, Inc v Wilson*, 463 Mich 231, 235 n 2; 615 NW2d 241 (2000).

B.  WHETHER THE PLAT DEDICATED THE ALLEY TO ALL HOMEOWNERS IN THE SUBDIVISION[3]

Plaintiff argues that the original 1923 plat dedicated the use of the alley to the subdivision lot owners as a whole.  We disagree.  The determination of a party's rights under a plat dedication depends on the intent of the platters.  See *Higgins Lake Prop Owners Ass'n v Gerrish Twp*, 255 Mich App 83, 88; 662 NW2d 387 (2003).  Where the language of the plat is clear and unambiguous, it must be enforced as written and no further inquiry is allowed.  *Dyball v Lennox*, 260 Mich App 698, 704; 680 NW2d 522 (2003).

The original plat dictates that "Joslin Drive as shown on the plat [is] hereby dedicated to the use of the public and that the *courts, walks, and park and Shore Drive and Home Wild Drive* are hereby dedicated to the use of the Lot Owners."  (Emphasis added).  There is no other language in the plat referring to lands dedicated to either the public or the lot owners as a whole.  There is also no ambiguity in the language.  Courts, walks, a park, and the two drives are identified in the plat; however, there is no indication that the alley was intended to be included in these dedications.  Indeed, plaintiff's own expert testified that, as platted, the alley was part of Outlot 2, which is now owned by a private party.  The plat does not dedicate the outlots to the public or lot owners as a whole.  Thus, the unambiguous language of the plat dedication does not

---

[3] The parties spend a considerable portion of their briefs arguing over whether defendants acquired title to the alley through adverse possession.  Presumably, this was based on the trial court's alternative pronouncement that, assuming plaintiff had any interest in the alley, she lost that interest "by adverse possession" to defendants.  We do not read the trial court's order in the same manner as do the parties.  Namely, we do not find this alternative line of reasoning by the trial court as the equivalent of a declaratory judgment in favor of defendants, finding that they established the elements of adverse possession and could quiet title to the alley.  And, to the extent this line in the trial court's written order was meant to declare that defendants held title to the alley by adverse possession, we would vacate that portion of the order.  In this regard, we first note that Robert and Patricia Cencek—the owners of Outlot 2—whom both parties agree originally owned the alley pursuant to the platted agreement, were not a party to the action.  Thus, we question the validity of a declaration of ownership rights in the alley without the platted owner of the property being involved in the action.  Furthermore, we note that defendants never pled a quiet title action involving the Cenceks before the trial court; thus, the court should not have entered judgment on this matter.  See *Pransky v Falcon Group, Inc*, __ Mich App __; __ NW2d __ (Docket Nos. 319266; 319613), slip op at 16.  Further, we note that if defendants wish to quiet title to the property, this is a matter that should involve the Cenceks, not plaintiff.

However, because we do not read the trial court's written order as one entering judgment on a quiet title claim that was never pled, we see no need to vacate any such portion of the order.  Accordingly, we find it unnecessary to decide the parties' arguments with regard to adverse possession, and instead focus on the heart of the matter that was properly before the the trial court: did plaintiff have a right to use the alley or have a right to use any other means of crossing defendants' property?  For the reasons discussed *infra*, we agree with the trial court that plaintiff did not have any such rights.

provide plaintiff any rights of access or ownership over the alley and, accordingly, the trial court did not err in refusing to grant plaintiff any rights over the alley based on the plat dedication.

## C. EASEMENTS

Plaintiff next argues that she can assert an easement to use the alley by one or more of the following easement-creation methods: an easement by necessity, an implied easement, and/or a prescriptive easement. We disagree.

### 1. IMPLIED EASEMENT AND EASEMENT BY NECESSITY

Although not phrased as such, plaintiff's claims for an "implied easement" and an "easement by necessity" are both claims for an easement by necessity, which is itself a subcategory of implied easements:

> An implied easement may arise in essentially two ways: (1) an easement by necessity and (2) an easement implied from a quasi-easement. An easement by necessity may be implied by law where an owner of land splits his property so that one of the resulting parcels is landlocked except for access across the other parcel. An easement by necessity may arise either by grant, where the grantor created a landlocked parcel in his grantee, or it may arise by reservation, where the grantor splits his property and leaves himself landlocked. This sort of implied easement is not dependent on the existence of any established route or quasi-easement prior to the severance of the estate by the common grantor; it is first established after the severance. A right of way of necessity is not a perpetual right. It ceases to exist when the necessity for its continuance ceases. [*Charles A Murray Trust v Futrell*, 303 Mich App 28, 41-42; 840 NW2d 775 (2013) (quotation marks and citations omitted).]

Plaintiff claims an implied easement on the grounds that (1) absent the easement, vehicles, especially emergency vehicles, cannot access 5104, the latter being in violation of the Michigan Building Code and (2) the two parcels at issue were originally one and, having been divided, left 5104 landlocked such that plaintiff does not possess the necessary vehicular access to her property.

We conclude that the trial court did not err in failing to grant plaintiff an easement by necessity over the alley. There is no dispute that, when the parties' properties were acquired in 1956, they were part of the same parcel. They were divided into their current configuration in 1962. Plaintiff's parcel is not now "landlocked." "[T]he requirement for an easement by necessity is that of strict or absolute necessity, and an easement by necessity ceases to exist when the necessity ceases." *Id*. at 55. That is, "an easement by necessity is not a right of way of mere convenience." *Id*. Plaintiff undisputedly has an easement over the sidewalk allowing her and her guests to reach her property on foot from the nearest court, where parking is available to plaintiff and others. The only question is whether a lack of direct vehicular access to plaintiff's property renders 5104 "landlocked" to the extent that an easement over the alley is of "strict or absolute necessity."

As noted, the law requires that the necessity be absolute and strict. *Id*. at 55. Thus, we must strictly construe this requirement and hold that vehicular access over the alley is not necessary, given that plaintiff has undisputed pedestrian access to her property. Indeed, this is not a case where plaintiff's property was completely landlocked with no practical way to access the property. Cf. *Kamm v Bygrave*, 356 Mich 189; 96 NW2d 770 (1959). Rather, plaintiff had a way to access the property, i.e., the sidewalk and parking area a short distance away, and wanted a more convenient means of access. On the facts presented, this is not enough to establish a strict necessity. See *Charles A Murray Trust*, 303 Mich App at 55 (explaining that "mere convenience" will not establish an easement by necessity). With regard to emergency vehicles, defendants argued and plaintiff did not dispute that it was approximately 50 feet from a separate maintenance easement over Outlot 2 to her front door, via the sidewalk easement. On these facts, we agree that plaintiff did not establish that it was strictly necessary to have access right to her front door. Moreover, with regard to emergency vehicles, the law recognizes that emergency personnel responding to emergency situations arrive under unusual circumstances "and may enter portions of the premises not open to the public." *Kreski v Modern Wholesale Elec Supply Co*, 429 Mich 347, 368; 415 NW2d 178 (1987). Plaintiff has not established that it was strictly necessary to use her preferred, proposed route for emergency vehicles. Accordingly, the trial court as the finder of fact did not err in failing to grant plaintiff an easement by necessity for emergency vehicle access.

Plaintiff's related argument that an easement by necessity is required to allow repair or construction vehicles to access her property also fails. Plaintiff testified that she would like to have work done to her property, e.g., removing rocks, having new siding and windows put in, and getting new furniture. However, plaintiff admitted that she had not talked to any vendor who told her that things she wanted done to the property could not be accomplished without vehicular access directly to 5104. Thus, although it is reasonable to assume that repair work might be made more arduous by workers only being able to access plaintiff's property by the sidewalk easement, plaintiff presented no *evidence* to that effect. It was plaintiff's burden to show that she was entitled to an easement by necessity. See *Mulcahy v Verhines*, 276 Mich App 693, 699; 742 NW2d 393 (2007). Due to the lack of evidence offered by plaintiff to suggest that her desired repair work could not be accomplished by using the sidewalk easement, combined with the fact that any necessity must be strict and absolute, *Charles A Murray Trust*, 303 Mich App at 55, the trial court did not err by failing to grant plaintiff an easement by necessity on the basis of non-emergency vehicular access. Again, plaintiff has at most established that an easement would be more convenient, but that is not enough to permit an easement for large delivery vehicles. See *Kahn-Reiss, Inc v Detroit & Northern S & L Ass'n*, 59 Mich App 1, 13; 228 NW2d 816 (1975), overruled in part on other grounds *Schmidt v Eger*, 94 Mich App 728, 734-735; 289 NW2d 851 (1980).

Plaintiff's argument that an easement by necessity is required under the Michigan Building Code is without merit as well. Plaintiff notes that Michigan has adopted the International Residential Code, 2012 edition. Mich Admin Code, R 408.30401. Plaintiff cites R 310.1 therein, which requires that "every sleeping room" have an emergency exit which "shall open directly into a public way, or a yard or court that opens to a public way." International Residential Code, R 310.1 (2012). As a preliminary matter, this rule deals with emergency egress from a home and has nothing to do with emergency vehicle access to a residential lot. Plaintiff does not appear to dispute that any emergency egress from her home leads "directly" to

her yard, thus satisfying the first part of the rule. Plaintiff argues, however, that having to cross her sidewalk easement over 5100 means that her yard does not "open[] to a public way" absent an easement by necessity over the alley. This argument fails for two reasons. First, the rule does not require that plaintiff's yard open *directly* to a public way. Rather, the yard must merely "open" to a public way. Plaintiff's yard leads to her sidewalk easement, which leads to her maintenance easement over Outlot 2, which leads to a court dedicated to all subdivision lot owners, which leads to Joslin Lake Drive, dedicated to the public (See plat map). Thus, her yard "opens" to a public way. Second, the International Residential Code defines "public way" as "[a]ny street, alley or other parcel of land open to the outside air leading to a public street, which has been deeded, dedicated or otherwise permanently appropriated to the public for public use . . . ." International Residential Code, R 202 (2012). Under no circumstances is the alley a "public way." The alleys in Home Wild Resort subdivision were not dedicated to anyone and were certainly not dedicated permanently to the public. Moreover, plaintiff has repeatedly asserted in this case that the alley is part of Outlot 2, which is privately owned by a non-party to this litigation, further defeating any claim that the alley is or ever was permanently deeded or dedicated to the public. Accordingly, plaintiff is not entitled to an easement by necessity under the cited grounds of the International Residential Code.

## 2. PRESCRIPTIVE EASEMENT

We also conclude that the trial court did not err in finding that plaintiff was not entitled to a prescriptive easement.

> An easement by prescription results from use of another's property that is open, notorious, adverse, and continuous for a period of fifteen years. The burden is on the party claiming a prescriptive easement to show by satisfactory proof that the use of the defendant's property was of such a character and continued for such a length of time that it ripened into a prescriptive easement. [*Mulcahy*, 276 Mich App at 699 (quotation marks and citation omitted).]

Plaintiff's prescriptive easement claim is at times confusing with regard to whether it refers to the platted alley or the 10-foot opening in the fence on defendants' property. We first address the platted alley, and note that there was no evidence to support a claim of a prescriptive easement over the platted alley. A vast majority of the testimony presented at trial referred to the 10-foot opening, not the platted alley. Based on the record before us, there was no testimony concerning the use of the alley that would permit a finding of a prescriptive easement for vehicular access.

We next consider, and reject, the claim that the use of the 10-foot opening in the fence on defendants' property could establish a prescriptive easement for vehicular access. Plaintiff's claim in this regard fails because she cannot establish a continuous 15-year period where vehicular access occurred through a 10-foot gap in the fence in order to reach 5104. Plaintiff testified that she, along with her visitors and repair workers she had hired, crossed 5100 in a vehicle via the 10-foot gap in the fence approximately 10 to 20 times per year. However, at the time of trial, plaintiff had only owned 5104 for approximately six years. This is well short of the 15-year continuous period necessary to establish a prescriptive easement. *Id*. While "[a] party may 'tack' on the possessory periods of predecessors in interest to achieve this fifteen-year

period by showing privity of estate," *Killips v Mannisto*, 244 Mich App 256, 259; 624 NW2d 224 (2001), plaintiff did not establish the 15-year period even considering tacking. Immediately prior to plaintiff's purchase in 2008, 5104 had been owned by banks and remained vacant. The only testimony regarding any use during that period was from Ronald Sipes, the realtor who sold plaintiff the property. However, Sipes testified that he only ever walked across 5100 to get to 5104.

Rita Munz[4] (formerly Busen) testified that she lived in 5104 from 1987 until 2000, i.e., 13 years. She further testified that the 10-foot gap in the fence was present the entire 13 years and that she, and others, used the gap to transport snowmobiles and allow in repair trucks approximately 10 times per year. However, Munz's testimony only establishes a 13-year period of continuous use and, moreover, she admitted that she had no idea whether the uses she described were with or without permission. Nonpermissive use is a necessary element of an easement by prescription. *Mulcahy*, 276 Mich App at 699. Furthermore, plaintiff failed to present any evidence to suggest that the 10-foot gap in the fence was used for vehicular access from 1985-1987 (which could be tacked to Munz's 13-year period to reach the necessary 15-year period) or any other 15-year period of continuous use by her predecessors in title. The only person to testify with any knowledge of that prior period was Michael Busen, who testified that, to the best of his recollection, a white "cross-buck" fence spanned all the way down the property line to the lakeshore from 1956 until 1979. Thus, the only evidence provided for this time period suggests that there was no 10-foot gap in the fence at all, indicating that no vehicular access was available through plaintiff's asserted opening from 1956 until 1979. 1979 is eight years before Munz began living at 5104. Moreover, Michael further testified that, to his knowledge, no one had ever driven across 5100 to access 5104 without permission.

Plaintiff, as the party asserting entitlement to a prescriptive easement, bore the burden of establishing the necessary elements. *Id*. She failed to do so. Accordingly, the trial court did not err in refusing to grant plaintiff a prescriptive easement.

## III. DOCKET NO. 323597

In Docket no. 323597, defendants argue that the trial court erred in failing to find plaintiff's claims frivolous and, accordingly, award defendants costs and attorney fees. "We review for clear error the circuit court's decision to impose sanctions on the ground that an action was frivolous . . . ." *Ladd v Motor City Plastics Co*, 303 Mich App 83, 103; 842 NW2d 388 (2013). "A decision is clearly erroneous where, although there is evidence to support it, the reviewing court is left with a definite and firm conviction that a mistake has been made." *Robert A Hansen Family Trust v FGH Indus, LLC*, 279 Mich App 468, 486; 760 NW2d 526 (2008) (citation and quotation marks omitted).

Defendants moved the trial court for sanctions pursuant to MCR 2.625(A)(2), which provides that:

---

[4] We note that the record and briefs inconsistently refer to Rita Munz as "as Rita Muns" and "Rita Munz." For the sake of consistency, this opinion will refer to her as "Rita Munz."

> In an action filed on or after October 1, 1986, if the court finds on motion of a party that an action or defense was frivolous, costs shall be awarded as provided by MCL 600.2591.

Defendants argued that plaintiff's claims were frivolous as defined in MCL 600.2591(3)(a)(*iii*), i.e., they were "devoid of arguable merit." Plaintiff originally brought four claims, alleging that she was entitled to: (1) access the alley due to the plat dedication; (2) an easement by necessity; (3) a prescriptive easement; and (4) an "easement by acquiescence." Each claim must be analyzed individually for frivolity. See MCR 2.625(B)(2).

Plaintiff's claim that the original plat of the subdivision dedicated the alleys to use of the lot owners was not frivolous. Although the plat did not dedicate the alleys, all of the other alleys connect to a street or court except the alley at issue. And plaintiff provided a persuasive argument concerning the intent of the platters which may have prevailed had we found the plat language ambiguous. *Id*. Although the unambiguous language of the plat controls, *Dyball*, 260 Mich App at 704, this claim was not so "devoid of arguable merit" as to render it frivolous.

Plaintiff's claim for easement by necessity was also not frivolous. This action was filed almost two months before this Court decided *Charles A Murray Trust*, 303 Mich App 28. Prior to that opinion, it was not settled that the sought access must be strictly, as opposed to reasonably, necessary. *Id*. at 45-49. Therefore, at the time of filing, plaintiff's argument for vehicular access would have been even more colorable. Because plaintiff's easement by necessity claim involved close and unresolved questions of law, it was not frivolous as devoid of arguable merit. Plaintiff's claim for a prescriptive easement was also not frivolous. While the claim fails, the evidence was not completely one-sided and, in our view, not so lacking as to render the claim frivolous.

Nor do we find that the trial court clearly erred by failing to deem frivolous plaintiff's claim for "easement by acquiescence." Plaintiff produced evidence that, at least for brief periods of time, there may have been some level of agreement in using the opening in the fence for some vehicular access. And, while the doctrine of acquiescence has traditionally been limited to boundary disputes when the parties are mistaken as to the true boundary line, see *Killips*, 244 Mich App at 260, we do not find clear error in the trial court's decision not to declare as frivolous plaintiff's assertion of the doctrine in support of her claim for an easement. Indeed, there was evidence of at least some mistake as to the location of the platted alley, and plaintiff sought to argue that the platted alley was meant to be used by all lot owners, not just the owners of Outlot 2. Taking this argument to its conclusion, it could be argued that if all lot owners could use the platted alley, and if the platted alley was mistaken for the 10-foot opening in the fence, then all lot owners could use the 10-foot gap. Thus, there was at least *arguable*—although not particularly compelling—merit to plaintiff's assertion of the doctrine under these circumstances.

## IV. CONCLUSION

In Docket no. 322822, we affirm the trial court's ruling that plaintiff had no rights over the disputed portion of the alley crossing 5100 Joslin Lake Drive or in the 10-foot opening in the

fence. In Docket no. 323597, we affirm the trial court's denial of defendants' motion for sanctions.

/s/ Patrick M. Meter
/s/ Stephen L. Borrello
/s/ Jane M. Beckering