# STATE OF MICHIGAN

# COURT OF APPEALS

MARY ANN LAMKIN and STEVE LAMKIN,

        Plaintiffs-Appellants,

v

EUGENE HARTMEIER, CYNTHIA
HARTMEIER, KEVIN HARTMEIER, DENNIS
MCCOMB, GLORIA MCCOMB, DANIEL
ENGRAM, DANIELLE ENGRAM, JAMES
BEAUDOIN, CECILE LAUDENSLAGER,
ANGELA CHRISTIE, KIMBERLY KRASKA,
JOAN BEAUDOIN, AARON KIRBY, DAMON
HARTMEIER, DENISE ENGRAM, DEANN
ENGRAM, DEREK ENGRAM, CATHERINE
BARRETT,

        Defendants-Appellees,
and

RONALD THYBAULT and the Estate of MARY
WECKESER,

        Defendants.

UNPUBLISHED
September 1, 2016

No. 326986
Livingston Circuit Court
LC No. 12-026600-NZ

Before: FORT HOOD, P.J., and RONAYNE KRAUSE and GADOLA, JJ.

PER CURIAM.

Plaintiffs appeal by right the trial court's resolution of their claims regarding defendants' use of Island Shore Drive, a private dirt road that wraps around the northwest shore of Oneida Lake[1] in Hamburg Township, in Livingston County. The western end of Island Shore Drive, located in Section 21, leads to and intersects M-36. To the east, Island Shore Drive connects to roads that provide access to lots on the northeast side of the lake, located in Section 22. The

---

[1] Oneida Lake was originally known as Island Lake.

-1-

dividing line between Sections 21 and 22 roughly bisects Oneida Lake. Plaintiffs own a parcel of property in Section 21 through which Island Shore Drive runs, and they contend that defendants, who own lots on the northeast side of Oneida Lake in Section 22, have no right to use Island Shore Drive, and if they did, they have exceeded the scope of any such right. We affirm in part, reverse in part, vacate in part, and remand for further proceedings.

From the publicly available records we can find, it appears that in 1853, the relevant property in Section 21 was originally patented to William Placeway, and the relevant property in Section 22 was originally patented to George Galloway. None of the property owned by plaintiffs ever came under common ownership with any of the property owned by defendants. By 1880, Placeway had conveyed the Section 21 property to Thomas Shehan, who split the property into ten lots and deeded an express easement, now known as Island Shore Drive, for access to M-36, to each parcel. At that time, an A. Mercer owned the portion of Section 22 to the northeast of Oneida Lake, then still called Island Lake, and out of that property two platted subdivisions were carved, Cady's Point Subdivision in 1922 and Island Lake Shores Subdivision in 1933. Although no express agreement for access was ever executed, these two subdivisions included internal roads, Point Comfort Drive and Lake View Drive, respectively, that merged together at their respective western ends roughly at the same point as the eastern end of Island Shore Drive, separated by two unplatted parcels. Point Comfort Drive was eventually renamed Schlenker Road. In 1949 the County Road Commission passed a resolution purporting to change the name of Lake View Drive to Island Shore Drive, although in 2005 the Hamburg Township Board of Trustees enacted another resolution purporting to make the same name change.

Plaintiffs assert that the Section 22 properties historically had some kind of access to main roads through the property lying to their east, which was also originally owned by Galloway but was owned by Governor Edwin Winans by the time of the Shehan split and by the Pleasant Lake Hills Corporation and Lakelands Golf Club by the time the Island Lake Shores Subdivision was platted. From the records we have found, there is some hint that there *may* have been access through that property in 1930. However, Mary Ann Lamkin testified that she had thoroughly researched the history of the access situation, and she determined that it was the Lakelands Golf Club that cut off access through its land, whereupon the Section 22 subdivision owners connected their internal roads to Island Shore Drive on the Shehan property. She indicated that from that time, in "the late '40s," the Section 22 subdivision owners accessed their property over Island Shore Drive. However, she also indicated that they may have had access via a sawmill until the Cady's Point Comfort subdivision was revised in 1960. Consequently, the evidence, such as it is, reveals that the Section 22 subdivision owners have been making exclusive use of Island Shore Drive through the Shehan property since at least 1960, and possibly a decade or more longer. It is undisputed that defendants' properties are land-locked and have *legally* been so since the subdivisions were created.

Plaintiffs acquired their property in 1980. We note that plaintiffs, or singularly plaintiff Mary Ann Lamkin, have been involved in a considerable number of prior civil actions involving their efforts, some of which were meritorious, and convicted of several crimes arising out of their prior efforts, to preclude the use of Island Shore Drive by others. See *Lamkin v Hamburg Twp Planning Comm*, unpublished opinion per curiam of the Court of Appeals, issued November 29, 2007 (Docket No. 265225); *Read Lumber & Hardware Inc v Lamkin*, unpublished opinion per curiam of the Court of Appeals, issued July 3, 2012 (Docket No. 303597); *Lamkin v Engram*,

295 Mich App 701; 815 NW2d 793 (2012); *People v Lamkin*, unpublished opinion per curiam of the Court of Appeals, issued July 25, 2013 (Docket No. 308695). Several other criminal appeals were sought, but this Court denied leave for lack of jurisdiction or lack of merit. Plaintiff Mary Ann Lamkin was also found liable for defamation that impliedly arose out of her efforts to halt the expansion of a business that used to operate at the intersection of Island Shore Drive and M-36. *Glazer v Lamkin*, 201 Mich App 432; 506 NW2d 570 (1993). Several of the above cases also involved a business at the same location.[2]

Plaintiffs maintained from the outset that defendants had a right to make use of Island Shore Drive for the limited purpose of gaining ingress and egress between their properties and M-36. At issue was the extent and nature of defendants' use of the easement, not, strictly speaking, whether they could ever use it at all. Consequently, plaintiffs essentially conceded from the outset that defendants had some manner of a prescriptive easement, which, as we will discuss, we would find established by the evidence in any event. The trial court, however, concluded that defendants had acquired a variety of easements by necessity. As we will also discuss, the trial court erred in so finding, although it appears that to some extent the trial court's conclusion may reflect an understandable confusion as to terminology.

A grant or denial of summary disposition is reviewed de novo on the basis of the entire record to determine if the moving party is entitled to judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "When reviewing a grant of equitable relief, an appellate court will set aside a trial court's factual findings only if they are clearly erroneous, but whether equitable relief is proper under those facts is a question of law that an appellate court reviews de novo." *McDonald v Farm Bureau Ins Co*, 480 Mich 191, 197; 747 NW2d 811 (2008). Although easement actions are equitable in nature, the precise extent of an easement right held by a party is a factual question reviewed for clear error. *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 130; 737 NW2d 782 (2007).

The holder of an easement possesses "a right to use the land of another for a specific purpose." *Bowen v The Buck & Fur Hunting Club*, 217 Mich App 191, 192; 550 NW2d 850 (1996). Easements could originally only be created by an express grant. *Coolidge v Learned*, 8 Pick (Mass) 504 (1829); *Frandorson Properties v Northwestern Mut Life Ins Co*, 744 F Supp 154, 156 (WD Mich, 1990). Today, easements can also be established by necessity and by prescription. The concepts are distinct, although "sometimes the same evidence will support either." *Coolidge*, 8 Pick 504; see also *Chapdelaine v Sochocki*, 247 Mich App 167, 174; 635 NW2d 339 (2001). An easement by necessity arises by operation of law where a common owner creates a land-locked parcel, either by conveying a parcel that is land-locked or conveying property such that their remaining property is land-locked. *Schumacher*, 275 Mich App at 130-

---

[2] We emphasize that some of those matters were meritorious in plaintiffs' favor. The significance is primarily that the use of Island Shore Drive has been contentious and troubling, all the more so for plaintiffs given their unique location on that road. Drawing the conclusion that plaintiffs are generically "litigious" from their understandable and specific concern with the use of Island Shore Drive would be grossly unwarranted.

131. The underlying principle is that unless the parties to the conveyance clearly indicated that they intended otherwise, they are presumed to have intended the land-locked parcel to have a right of access, and an easement by necessity will be limited in scope to, as the name suggests, reasonable necessity, not mere convenience. *Chapdelaine*, 247 Mich App at 172-173.

As noted, the evidence in this matter shows that none of the Section 22 properties ever came under common ownership with the Shehan property. Consequently, no matter what the practicalities of the situation might be, it is legally impossible for any defendants to have any easement by necessity over Island Shore Drive. To the extent the trial court found that defendants had an easement by necessity, the trial court erred and is reversed.

In contrast, an easement by prescription is essentially a matter of adverse possession, except that instead of exclusivity, it requires open, notorious, adverse, and continuous *use* of another's property for the requisite fifteen-year period. *Mulcahy v Verhines*, 276 Mich App 693, 699; 742 NW2d 393 (2007); *Matthews v Dep't of Natural Resources*, 288 Mich App 23, 37; 792 NW2d 40 (2010). For the use to be sufficiently "continuous," the continuity need only be consistent with "the nature and character of the right claimed." *von Meding v Strahl*, 319 Mich 598, 613-614; 30 NW2d 363 (1948). An easement by prescription can also be established if the parties intended for a right to be created and subsequently acted as if it had, but for some reason failed to comply with the formalities required to do so correctly. *Mulcahy*, 276 Mich App at 699-700.

There is no evidence that Shehan intended to create any right for the benefit of any parcel of property other than the parcels carved out of his own. Indeed, the Section 22 subdivisions did not exist until long after Shehan made the split that resulted in the creation of Island Shore Drive. Furthermore, there is at least some evidence that when the subdivisions were created, there was no need for the owners of parcels therein to make use of Island Shore Drive, suggesting that the prior common owner of that portion of Section 22 also had no need to make use of Island Shore Drive. Likewise, there is no evidence that any of plaintiff's predecessors in interest ever intended to grant any of defendants' predecessors in interest any rights to make use of Island Shore Drive. Consequently, defendants cannot have a prescriptive easement arising out of an intended but imperfectly created servitude.

Nevertheless, the evidence unambiguously shows that the Section 22 subdivision lot owners have made open, notorious, adverse, and continuous use of Island Shore Drive for ingress and egress between their property and M-36 since at least 1960 and possibly since the late 1940's. There is no dispute that they presently have no other way to do so, and what historical evidence exists comes from plaintiffs themselves, showing that by the time they acquired their property, Island Shore Drive had *already* been the only available route for at least twenty years, well in excess of the requisite fifteen.

Notwithstanding plaintiffs' effective concessions below that defendants had the right to use Island Shore Drive for ingress and egress, they contend on appeal that defendants lack prescriptive easements because they have not *each* shown that they *personally*, or they and their direct predecessors in interest, have used Island Shore Drive for the requisite fifteen-year period. We will consider this argument, because a party generally "is entitled to the benefit of testimony

in support of a verdict in [their] favor despite [their] expression of an opinion inconsistent therewith." *Ortega v Lenderink*, 382 Mich 218, 223; 169 NW2d 470 (1969).

We have found no published opinions expressly addressing the extent to which a party seeking to establish an easement by prescription may rely on uses made by neighbors,[3] and we find the two unpublished opinions that come close to be distinguishable.[4] In *Pamela B Johnson Trust v Camp*, unpublished opinion per curiam of the Court of Appeals, Docket No. 309913 (issued June 4, 2013), this Court addressed whether a party had exceeded the scope of a particular easement, the existence of which was not disputed, and found that whether any other third parties had abused the easement was not relevant to whether the defendant had done so. *Id.*, slip op at 2-3. In *Keiser v Feister*, unpublished opinion per curiam of the Court of Appeals, Docket No. 282531 (issued March 2, 2010), this Court concluded that "collective tacking" had never been recognized in Michigan, so a party seeking to establish an easement by prescription could not do so simply by showing that someone in the neighborhood had done so for the requisite period. *Id.*, slip op at 6-7. *Johnson Trust* clearly addresses an inapplicable scenario, and although the distinction between this case and *Keiser* is more subtle, that distinction illustrates an important factual consideration in this case.

In particular, although a party seeking an easement right must establish that right by "clear and cogent evidence," *Matthews*, 288 Mich App at 37, there is no particular requirement that that evidence cannot be circumstantial. We cannot find any opinion directly so holding, but we note that the "clear and cogent" quantum of proof is high, but not as high as the "beyond a reasonable doubt" standard required in criminal cases. *McQueen v Black*, 168 Mich App 641, 645 n 2; 425 NW2d 203 (1988). There is no doubt that circumstantial evidence may form the basis of a criminal conviction. See, e.g., *People v Hoskins*, 403 Mich 95, 100-101; 267 NW2d 417 (1978). While we agree with the holding in *Keiser* that a party seeking to establish a prescriptive easement may not "tack" the use made of land by their neighbors, we entirely reject any suggestion that proof of the requisite privity with predecessors must necessarily only be based on direct evidence.[5] See *von Meding*, 319 Mich at 614-615; see also *Gay v Wilson*, 327

---

[3] Although we note in passing, the theory being merely tangential to the instant matter, that privity is unnecessary "to employ tacking of holdings to obtain the 15-year minimum under the doctrine of acquiescence." *Siegel v Renkiewicz Estate*, 373 Mich 421, 426; 129 NW2d 876 (1964).

[4] Unpublished opinions of this Court are not binding, MCR 7.215(C)(1), and although consideration thereof is disfavored, we may do so and may find them persuasive.

[5] Our dissenting colleague contends that we fail to address case law holding that each party seeking to establish a prescriptive easement must prove privity of estate. We find this baffling, because we agree with those holdings; we simply perceive no reason why such proofs may not rely on inferences and indirect or circumstantial evidence the way *essentially anything else* may usually be used to prove essential factual elements of any other matter. We respect our dissenting colleague's opinion that the evidence introduced here is insufficient, but we respectfully disagree.

Mich 265, 270-271; 41 NW2d 500 (1950). The unusual scenario here illustrates precisely why: the very fact that, for well over twenty years[6] before plaintiffs even bought their property, *there was no other way to gain access to the Section 22 subdivisions*, intrinsically constitutes powerful evidence that *each and every* lot owner—not merely "someone"—*was* making use of Island Shore Drive. That would definitionally include the direct predecessors in interest of each defendant.[7]

Where we disagree with plaintiffs and the trial court is their respective assessments of *how* defendants may make use of Island Shore Drive. It is clear that the easement depends on the *purpose* for which it is being used, not the particular means of conveyance. Obviously, unnecessary dallying, unnecessary noise, unnecessarily destructive maneuvering, and other such frivolities or aggravations beyond what intrinsically accompanies any particular conveyance will overburden the easement. However, beyond that, there is no reason why defendants should have to use a car for ingress and egress if they choose not to. They would be free to make use of walking, bicycling, driving, or whatever other legal[8] form of conveyance they wish within the physical limitations imposed by the path. They are simply not free to do so for any reason or in any way other than for ingress and egress between their lots and M-36. Conversely, just because, say, walking could be perceived as somehow "less burdensome" than driving does not mean it is automatically permitted unless a defendant is walking the easement for the purpose of ingress and egress.

We therefore affirm, to a limited extent, the trial court's finding that defendants enjoy a prescriptive easement for ingress and egress between M-26 and their homes over Island Shore Drive. The limitation, as noted, is that the easement is *only* for ingress and egress; it does not include any right to make use of the easement for recreational purposes. The right of ingress and

---

[6] As a general matter, at that point the right to make use of an easement traditionally becomes presumed, and the owner of the servient estate must show that such usage was permissive. *Haab v Moorman*, 332 NW2d 126, 144-145; 50 NW2d 856 (1952). This does not, of course, shift the ultimate burden of proof, but it does establish that the jury may draw certain inferences. *Widmayer v Leonard*, 422 Mich 280, 289-291; 373 NW2d 538 (1985).

[7] In *Keiser*, the sought-after easement involved back-lot owners hoping to establish a right to make use of waterfront property. Such a use is, obviously and vastly distinguishable from the case at bar, entirely optional. Gaining actual access to the property on which one lives is not.

[8] Plaintiffs have contended that ATVs, or all-terrain vehicles, are illegal to use on the Shehan portion of Island Shore Drive because they are not allowed to be used on roads. We express no opinion as to that point, but we note that it is common knowledge that ATVs can be considerably louder than motor vehicles, or at least generate a substantially different kind of noise, are typically used for recreation rather than truly for transportation, and may cause unique damage to an unpaved road surface. We do not hold that they are or are not permissible, per se, but we leave it to the parties on remand to evaluate their legality and whether they could ever be permissible. Rather, we hold only that the use of an ATV on the Shehan portion of Island Shore Drive for recreational purposes is absolutely not permitted by the easement.

egress does, consistent with other reasonable concessions made by plaintiffs in their depositions, extend to reasonable invitees, such as delivery vehicles, emergency vehicles, utility workers or contractors, or guests. We note that *some* defendants did provide direct evidence that they personally, or they and their direct predecessors, had used Island Shore Drive for at least the requisite period, but we are not persuaded that the evidence demonstrates a greater use than for ingress and egress.

Plaintiffs contend that the trial court should not have dismissed their claims for trespass and for nuisance. On the basis of our holdings above, we agree in part. Clearly, defendants did not commit a trespass by using Island Shore Drive for ingress and egress. However, plaintiffs' trespass claim also included allegations that defendants damaged their property *outside* the easement, and furthermore, as noted, using Island Shore Drive for recreational purposes exceeds its scope. "Activities by the owner of the dominant estate that go beyond the reasonable exercise of the use granted by the easement may constitute a trespass to the owner of the servient estate." *Schadewald v Brule*, 225 Mich App 26, 40; 570 NW2d 788 (1997). Conversely, a dominant estate holder "has the privilege to do such acts as are necessary to make effective the enjoyment of the easement, unless the burden upon the servient tenement is thereby unreasonably increased." *Mumrow v Riddle*, 67 Mich App 693, 699; 242 NW2d 489 (1976). The touchstone being reasonableness under the circumstances and what amounts to a balancing test, *id.* at 699-700, and in light of the present procedural posture of this matter, we are not in a position to evaluate whether defendants have overburdened the easement.

Likewise regarding the nuisance claim, it is difficult for us to understand how defendants can have created a nuisance by failing to maintain any part of Island Shore Drive, in light of plaintiffs' failure to articulate how they are obligated to do so and concession that they themselves damaged the road surface and objected to collective maintenance of the roadway through use of a special assessment district. Nevertheless, they also alleged that defendants engaged in acts of gratuitous speeding, honking horns, spinning tires, and otherwise generating disturbances. Noise *can* constitute a nuisance, depending on its character, volume, time, duration, and other circumstances. *Smith v Western Wayne Co Conservation Ass'n*, 380 Mich 526, 536; 158 NW2d 463 (1968). Again, we are not in a position to evaluate most of the real merits of this claim.

We find that the trial court clearly was correct in dismissing *some* of plaintiff's trespass and nuisance claims, but we conclude that the trial court went too far in dismissing them in their entirety. We lack a sufficient record to determine the merits of the remainder of plaintiff's claims. Therefore, consistent with the above paragraph, we partially vacate the trial court's dismissal of plaintiff's trespass and nuisance claims, and we remand those for further proceedings consistent with this opinion. Consequently, it is unnecessary for us to address plaintiffs' motion for reconsideration. While this result may not be consistent with the most restrictive, narrow, and harsh reading of applicable precedent theoretically possible, we find it dictated by a *fair* reading thereof and supplemented by the non-binding but certainly not irrelevant equities of the situation when viewed as a whole.

We affirm in part, reverse in part, vacate in part, and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.  No costs, no party having prevailed in full.

/s/ Karen M. Fort Hood
/s/ Amy Ronayne Krause